# Illinois Official Reports

## Supreme Court

***People v. Minnis*, 2016 IL 119563**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARK MINNIS, Appellee. |
| Docket No. | 119563 |
| Filed<br>Rehearing denied | October 20, 2016<br>November 21, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, the Hon. Robert Freitag, Judge, presiding. |
| Judgment | Reversed.<br>Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn Shaprio, Solicitor General, and Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard, Deputy Defender, and Daaron V. Kimmel, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee. |

Rebecca K. Glenberg, of Roger Baldwin Foundation of ACLU, Inc., of Chicago, and Adam Schwartz and Sophia Cope, of Electronic Frontier Foundation, of San Francisco, California, *amici curiae*.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 Section 3(a) of the Sex Offender Registration Act (Registration Act or Act) requires sex offenders to disclose and periodically update information regarding their Internet identities and websites. 730 ILCS 150/3(a) (West 2014). This information is subject to public inspection as provided by the Sex Offender Community Notification Law (Notification Law or Law) (730 ILCS 152/101 *et seq.* (West 2014)). The circuit court of McLean County entered an order finding that this Internet disclosure provision was overbroad in violation of the first amendment to the United States Constitution. U.S. Const., amend. I. The State appeals directly to this court. Ill. S. Ct. R. 603 (eff. Oct. 1, 2010). We now reverse the order of the circuit court and remand the cause to the circuit court for further proceedings.

¶ 2 ### I. BACKGROUND

¶ 3 On December 15, 2010, the circuit court adjudicated defendant, Mark Minnis, a delinquent minor for committing the offense of criminal sexual abuse (720 ILCS 5/12-15(b) (West 2010)).[1] The court sentenced him to 12 months' probation. Defendant's adjudication for criminal sexual abuse rendered him a "sex offender" pursuant to the Registration Act (730 ILCS 150/2(A)(5), (B)(1) (West 2010)). Adhering to the statutory mandate (730 ILCS 150/3-5(a) (West 2010)), the court ordered defendant to register as a sex offender.

¶ 4 On December 17, 2010, defendant reported to the Normal police department to register. On his first sex offender registration form, defendant disclosed, *inter alia*, his two e-mail addresses and his Facebook account. The Registration Act required defendant to report thereafter at least once per year (730 ILCS 150/6 (West 2010)). Defendant's May 2011 registration form listed the same Internet information.[2]

¶ 5 Defendant registered again on August 29, 2014. Defendant included his two e-mail addresses on the registration form, but he omitted his Facebook account. On September 9, Normal police officers viewed defendant's publicly accessible Facebook profile online. They

---

[1]Defendant, then 16 years old, committed an act of sexual penetration or sexual conduct with the victim, who was 14 years old. The offense is a Class A misdemeanor. 720 ILCS 5/12-15(b), (d) (West 2010).

[2]These are the only two registration forms contained in the record.

observed that defendant changed his Facebook cover photo only one month prior to his August 2014 registration. On September 12, defendant was arrested and charged by information with failing to register as a sex offender pursuant to section 3(a) of the Act (730 ILCS 150/3(a) (West 2014)). On September 24, defendant was indicted for that offense, "in that he did not register an Internet site, a Facebook page, which he had uploaded content to."

¶ 6 In May 2015, defendant filed a pretrial motion to dismiss the indictment. Defendant argued that the Internet disclosure provision in section 3(a) of the Registration Act was overbroad and vague in violation of the United States Constitution. On July 7, 2015, the circuit court entered an order granting defendant's motion to dismiss the indictment. The court rejected defendant's argument that the challenged provision in section 3(a) was unconstitutionally vague. However, the court found that the Internet disclosure provision was overbroad in violation of the first amendment. In compliance with Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006), the circuit court specifically found the entire Internet disclosure provision unconstitutional, both on its face and as applied to defendant, based solely on the first amendment.[3]

¶ 7 Because this provision in section 3(a) was held invalid, the State appeals directly to this court. Ill. S. Ct. R. 603 (eff. Oct. 1, 2010). We granted the American Civil Liberties Union of Illinois and the Electronic Frontier Foundation leave to submit an *amici curiae* brief in support of defendant. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent background will be discussed in the context of our analysis of the issues.

¶ 8                                    II. ANALYSIS

¶ 9 Prior to addressing the merits of the circuit court's finding of unconstitutionality, we must consider which part of section 3(a) of the Registration Act was properly before the circuit court. Pertinent to the instant case, section 3(a) requires a sex offender to disclose and periodically update two categories of Internet information—identities and websites—described as follows:

> "all e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities that the sex offender uses or plans to use, all Uniform Resource Locators (URLs) registered or used by the sex offender, all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information ***." 730 ILCS 150/3(a) (West 2014).

The circuit court invalidated the disclosure requirement for both categories.

¶ 10                          A. Defendant's Standing

¶ 11 The State contends that the circuit court "lacked jurisdiction to rule on the constitutionality" of the entire Internet disclosure provision in section 3(a). The State observes

---

[3]The parties base their arguments exclusively on the first amendment. However, *amici* additionally invoke the free speech guaranty of the Illinois Constitution (Ill. Const. 1970, art. I, § 4). An *amicus curiae* is not a party but a friend of the court, who takes the case with the issues framed by the parties. Because the parties do not rely on the state constitutional free speech guaranty, we decline to discuss it. See *In re J.W.*, 204 Ill. 2d 50, 72-73 (2003); *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 61-62 (2001).

that defendant was charged specifically with failing to register his Facebook account, which is an Internet site. Therefore, according to the State, "the circuit court had jurisdiction to rule only on the constitutionality" of the Internet disclosure provision as it pertains to websites and lacked jurisdiction to declare unconstitutional the disclosure provision as it pertains to Internet identities.

¶ 12　　　　We disagree. The State overlooks that defendant bases his facial challenge to the entire Internet disclosure provision on first amendment overbreadth grounds. The first amendment provides, in pertinent part, that "Congress shall make no law *** abridging the freedom of speech" (U.S. Const., amend. I) and applies to the States through the due process clause of the fourteenth amendment. *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937). The assertion of a first amendment overbreadth claim is not the application of a procedural rule but is a function of substantive first amendment law. *Sabri v. United States*, 541 U.S. 600, 610 (2004). A state court may not avoid a proper facial attack brought on federal constitutional grounds. *New York v. Ferber*, 458 U.S. 747, 767 (1982).

¶ 13　　　　Generally, a party may not raise, and a court will not consider, a constitutional challenge to a statutory provision that does not affect that party. *In re M.I.*, 2013 IL 113776, ¶¶ 32, 34. Thus, a court will not consider a constitutional challenge to a criminal statutory provision under which a defendant has not been charged. See, *e.g.*, *People v. Blackorby*, 146 Ill. 2d 307, 320-21 (1992); *People v. Palkes*, 52 Ill. 2d 472, 480 (1972). This traditional rule reflects two cardinal principles: the personal nature of constitutional rights and prudential limitations on constitutional adjudication. *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973).

¶ 14　　　　"The First Amendment overbreadth doctrine, however, represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court." *Bates v. State Bar*, 433 U.S. 350, 380 (1977). "This 'exception to the usual rules governing standing,' *Dombrowski* v. *Pfister*, [380 U.S. 479, 486 (1965)], reflects the transcendent value to all society of constitutionally protected expression." *Bigelow v. Virginia*, 421 U.S. 809, 816 (1975). As the United States Supreme Court has explained:

> "We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions. [Citations.] Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, [citation]—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

Therefore, in the first amendment context, courts permit attacks on overly broad statutes without requiring that the person making the attack show that his or her specific conduct was actually protected. *Bigelow*, 421 U.S. at 815-16 (collecting cases); *People v. Holder*, 96 Ill. 2d 444, 449 (1983); *Village of Schaumburg v. Jeep Eagle Sales Corp.*, 285 Ill. App. 3d 481, 484-85 (1996) (based on first amendment overbreadth grounds, defendant charged with violating particular subsections of ordinance had standing to challenge other subsections with which defendant was not charged).

¶ 15 Of course, a person must present more than subjective allegations of a subjective "chill." "There must be a 'claim of specific present objective harm or a threat of specific future harm.' " *Bigelow*, 421 U.S. at 816-17 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

¶ 16 In the case at bar, defendant clearly may challenge the entire Internet disclosure provision based on first amendment overbreadth grounds. As a sex offender, defendant is under a continuing obligation to disclose to authorities all of the information specified by section 3(a) of the Registration Act. That includes both Internet identities and websites. Defendant maintains and uses e-mail addresses as well as a Facebook account. Any failure to disclose those e-mail addresses would subject defendant to prosecution under the identity disclosure provision, just as his failure to disclose his Facebook account triggered prosecution under the website disclosure provision. In light of what happened here, the threat of prosecution from such a lapse can hardly be considered speculative. It is real and immediate. See *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988).

¶ 17 Where a person engages in conduct arguably affected with a constitutional interest but proscribed by statute and there exists a credible threat of prosecution thereunder, that person need not risk being arrested and charged before challenging the provision under the first amendment. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979). Therefore, defendant clearly could have challenged the Internet identity disclosure provision as well as the website disclosure provision even before this prosecution was initiated. Given that defendant had standing to bring a pre-enforcement action to challenge the entire Internet disclosure provision, it would be anomalous to hold that his standing has somehow been diminished or lost now that charges have actually been filed. Nothing in first amendment jurisprudence supports such a position. Therefore, we hold that the first amendment allowed defendant to challenge the constitutionality of the entire Internet disclosure provision.

¶ 18 We observe that the circuit court specifically found that the Internet disclosure provision was unconstitutional both on its face and as applied to defendant. An "as applied" challenge requires the challenging party to show that a statute is unconstitutional as it applies to him or her. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). Thus, the particular facts and circumstances surrounding the challenging party become relevant. *In re M.A.*, 2015 IL 118049, ¶¶ 39-40; *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008).

¶ 19 However, in the case at bar, the circuit court held no evidentiary hearing and made no findings of fact. In such a factual vacuum, a court is not capable of making an "as applied" determination of unconstitutionality. Without an evidentiary record, any finding that a statute is unconstitutional "as applied" is premature, and the constitutional challenge must be facial. *People v. Rizzo*, 2016 IL 118599, ¶ 26; *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004) (citing *Reno v. Flores*, 507 U.S. 292, 300-01 (1993)).

¶ 20                                    B. First Amendment Overbreadth

¶ 21 We now address whether section 3(a) of the Registration Act violates the first amendment by requiring a sex offender to disclose his or her Internet identities and websites (730 ILCS 150/3(a) (West 2014)). The constitutionality of a statute is a question of law that we review *de novo*. All statutes are presumed to be constitutional. The party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must

construe a statute so as to uphold its constitutionality, if reasonably possible. *M.A.*, 2015 IL 118049, ¶ 21; *John M.*, 212 Ill. 2d at 265-66; *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

¶ 22    The first amendment right to freedom of speech includes the right to publish and distribute writings while remaining anonymous. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *Talley v. California*, 362 U.S. 60, 64-65 (1960). "Anonymity is a shield from the tyranny of the majority. [Citation.] It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre*, 514 U.S. at 357.

¶ 23    First amendment protections for speech extend fully to communications made through the medium of the Internet. "Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer. *** '[T]he content on the Internet is as diverse as human thought.' " *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997) (quoting *American Civil Liberties Union v. Reno*, 929 F. Supp. 824, 842 (E.D. Pa. 1996)). Thus, we agree with our appellate court that the first amendment right to speak anonymously extends to those expressing views on the Internet. *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489, ¶ 16; *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 15; see also *Ghanam v. Does*, 845 N.W.2d 128, 137 (Mich. Ct. App. 2014); *Solers, Inc. v. Doe*, 977 A.2d 941, 950-51 (D.C. 2009); *Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432, 440-42 (Md. 2009); *Mobilisa, Inc. v. Doe 1*, 170 P.3d 712, 717 (Ariz. Ct. App. 2007). Nevertheless, "it is well understood that the right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). It follows that the right to anonymous speech, including anonymous Internet speech, is not absolute. *Ghanam*, 845 N.W.2d at 137; *Solers, Inc.*, 977 A.2d at 951.

¶ 24    In a typical facial challenge, a defendant would have to establish that there is no set of circumstances under which the statute would be valid. The fact that the statute could be found unconstitutional under some circumstances would not establish its facial invalidity. *M.A.*, 2015 IL 118049, ¶ 39; *John M.*, 212 Ill. 2d at 269. However, as earlier discussed, a facial challenge based on first amendment overbreadth is provided out of concern that the threat of enforcement of an overbroad law may chill or deter constitutionally protected speech, especially when the statute imposes criminal penalties. *Hicks*, 539 U.S. at 119; *People v. Clark*, 2014 IL 115776, ¶ 11; *People v. Bailey*, 167 Ill. 2d 210, 226 (1995). Yet, invalidating a law that in some of its applications is perfectly constitutional has harmful social costs. Recognizing that overbreadth invalidation is "strong medicine," a law may be invalidated as overbroad only if a substantial number of its applications to protected speech are unconstitutional, judged in relation to the statute's plainly legitimate sweep. *United States v. Williams*, 553 U.S. 285, 292-93 (2008); *Hicks*, 539 U.S. at 119-20; *People v. Williams*, 235 Ill. 2d 178, 199-200 (2009).

¶ 25    We first construe the challenged statute. A court cannot determine whether a statute reaches too far without first knowing what the statute covers. *United States v. Stevens*, 559 U.S. 460, 474 (2010); *People v. Alexander*, 204 Ill. 2d 472, 485 (2003); *Bailey*, 167 Ill. 2d at 226. The Registration Act and the Notification Law "operate in tandem, providing a comprehensive scheme for the registration of Illinois sex offenders and the dissemination of

information about these offenders to the public." *People v. Cornelius*, 213 Ill. 2d 178, 181 (2004) (citing *Malchow*, 193 Ill. 2d at 416). "Our primary objective in construing a statutory scheme is to ascertain and give effect to the intent of the legislature." *People v. Boyce*, 2015 IL 117108, ¶ 15; see *People ex rel. Scott v. Illinois Racing Board*, 54 Ill. 2d 569, 577 (1973) (stating that two statutes were "part of a comprehensive statutory plan *** and their provisions should be viewed as integral parts of a whole"). The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the legislature did not intend to create absurd, inconvenient, or unjust results. *People v. Hunter*, 2013 IL 114100, ¶ 13 (and cases cited therein).

¶ 26    The Registration Act was enacted in 1986.[4] All sex offenders, as defined by section 2 of the Registration Act (730 ILCS 150/2 (West 2014)), must register in person with local law enforcement officials and "provide accurate information as required by the Department of State Police." 730 ILCS 150/3(a) (West 2014). Prior to 2007, this information disclosed only the sex offender's actual identity and physical whereabouts. However, a 2007 amendment expanded this information to include a sex offender's Internet identity and websites. Pub. Act 95-229 (eff. Aug. 16, 2007) (amending 730 ILCS 150/3(a) (West 2006)). Section 3(a) currently provides in pertinent part:

> "Such information shall include a current photograph, current address, current place of employment, the sex offender's *** telephone number, including cellular telephone number, the employer's telephone number, school attended, *all e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities that the sex offender uses or plans to use, all Uniform Resource Locators (URLs) registered or used by the sex offender, all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information* ***. The information shall also include *** the county of conviction, license plate numbers for every vehicle registered in the name of the sex offender, the age of the sex offender at the time of the commission of the offense, the age of the victim at the time of the commission of the offense, and any distinguishing marks located on the body of the sex offender." (Emphasis added.) 730 ILCS 150/3(a) (West 2014).

Further, a sex offender "shall report in person to the appropriate law enforcement agency with whom he or she last registered within one year from the date of last registration and every year thereafter and at such other times at the request of the law enforcement agency not to exceed 4 times a year." 730 ILCS 150/6 (West 2014). With certain exceptions not relevant in this case, a sex offender must register for a 10-year period. 730 ILCS 150/7 (West 2014). A sex offender

---

[4]The statute was originally titled the Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, ¶ 221 *et seq*.). A 1996 amendment gave the statute its current title (730 ILCS 150/1 *et seq*. (West 1996)).

"who knowingly or wilfully gives material information required by [the Registration Act] that is false is guilty of a Class 3 felony." 730 ILCS 150/10 (West 2014).

¶ 27 A sex offender who is subject to the Registration Act "is, in turn, also subject to the provisions of the Notification Law." *Cornelius*, 213 Ill. 2d at 182. Enacted in 1995 (730 ILCS 152/101 *et seq.* (West 1996)), the Notification Law requires the Illinois State Police to maintain a sex offender database that identifies sex offenders and makes information about them available to the persons that the Notification Law specifies. 730 ILCS 152/115(a) (West 2014). Law enforcement officials *must* disclose the above-quoted information required under section 3(a) of the Registration Act to the following county entities: institutions of higher education, public school boards, child care facilities, libraries, public housing agencies, the Illinois Department of Children and Family Services, social service agencies providing services to minors, and volunteer organizations providing services to minors. Also, the above-quoted information *must* be disclosed to *any* victims of any sex offenses, not only the victim of the sex offense for which the sex offender had been convicted. 730 ILCS 152/120(a) (West 2014) (counties except Cook County). Law enforcement officials may disclose, in their discretion, this information "to any person likely to encounter a sex offender." 730 ILCS 152/120(b) (West 2014). For all other members of the public, this information must be made available upon request (730 ILCS 152/120(c) (West 2014)) and may be placed "on the Internet or in other media." 730 ILCS 152/120(d) (West 2014). Further, the Illinois State Police must maintain an Internet website that makes sex offenders' registration information available to the public. 730 ILCS 152/115(b) (West 2014).

¶ 28 However, dissemination of information regarding juvenile sex offenders is limited to any individual "when that person's safety may be compromised for some reason related to the juvenile sex offender." 730 ILCS 152/121(a) (West 2014). "Public information concerning juvenile sex offenders thus is much more restricted than information concerning adult sex offenders." *J.W.*, 204 Ill. 2d at 75. Also, if the juvenile sex offender is enrolled in school, the local law enforcement agency shall provide a copy of the sex offender registration form only to that school's principal, chief administrative officer, or guidance counselor. The registration information must be kept separate from the juvenile sex offender's other school records. 730 ILCS 152/121(b) (West 2014). Accordingly, while the registry, as it pertains to adults, "provides for wide dissemination of registration information to the public," a juvenile sex offender's registration information is "available only to a very limited group of people." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 203 (2009). Further, juvenile sex offenders may petition for termination of registration two years after their initial registration. 730 ILCS 150/3-5(c) (West 2014).[5]

¶ 29 We next address whether this statutory scheme warrants first amendment scrutiny. There must be a realistic danger that the statute will significantly compromise recognized first amendment rights. *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984); *Clark*, 2014 IL 115776, ¶ 11; *People v. Haywood*, 118 Ill. 2d 263, 275 (1987) (collecting cases). If the challenged statute does not reach constitutionally protected conduct, our analysis ends. See, *e.g.*, *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495-96 (1982); *Bailey*, 167 Ill. 2d at 226-28; *People v. Ryan*, 117 Ill. 2d 28, 33 (1987).

---

[5]The record does not disclose whether defendant petitioned for termination.

¶ 30    Before this court, the State contends that the Internet disclosure provision does not "unconstitutionally burden sex offenders' First Amendment interest in anonymity." The State observes that the disseminated disclosure information allows the public to identify the Internet forums in which the sex offender has communicated within the offender's *previous* registration period, up to and including the day he or she registers. "Because section 3(a) largely requires only retroactive disclosure," the State argues, the Internet disclosure provision does not "eliminate" a sex offender's ability to speak anonymously online. Thus, according to the State, the prospect that the disclosure provision will deter sex offenders from speaking online "is too speculative to support defendant's First Amendment challenge."

¶ 31    We disagree. The State is correct that the disclosure provision does not force a sex offender to reveal the information as a *precondition* to expression. Courts have invalidated such statutes due to the resulting surrender of anonymity. See, *e.g.*, *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 165-68 (2002); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 198-200 (1999). However, "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Further, the State overlooks that anonymity protects unpopular individuals from *retaliation*. *McIntyre*, 514 U.S. at 341-42, 357. Retaliation, by definition, is "retroactive" in that it reacts to speech previously uttered. Thus, a statute that operates retroactively can nonetheless unconstitutionally deter or chill anonymous speech. Further, the Registration Act imposes criminal sanctions for noncompliance, which additionally may cause persons whose expression is constitutionally protected to refrain from exercising their rights. *Gooding v. Wilson*, 405 U.S. 518, 521 (1972). We conclude that the Internet disclosure provision impacts constitutionally protected conduct, and therefore, first amendment scrutiny is warranted.

¶ 32    The parties next disagree on the appropriate level of scrutiny for the Internet disclosure provision of section 3(a) of the Registration Act. Defendant and *amici* contend that the disclosure provision is subject to strict judicial scrutiny. Content-based laws are presumptively unconstitutional and may be justified only if they survive so-called strict scrutiny, which requires a court to find that a restriction is narrowly tailored to serve a compelling government interest. *Reed v. Town of Gilbert*, 576 U.S. ___, ___, 135 S. Ct. 2218, 2226 (2015); *Alexander*, 204 Ill. 2d at 476. Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message conveyed. This requires a court to first consider whether the face of the statute draws distinctions based on the message a speaker conveys. If it does not, the court must next consider whether the facially neutral statute cannot be justified without reference to the content of the regulated speech, or if the government adopted the statute because of disagreement with the message the speech conveys. If so, then the facially neutral statute will be considered a content-based regulation of speech. *Reed*, 576 U.S. at ___, 135 S. Ct. at 2227-28 (and cases cited therein).

¶ 33    In contrast, laws that are unrelated to the content of speech are subject to an intermediate level of scrutiny because in most instances they pose a less substantial risk of removing certain ideas or viewpoints from the public dialogue. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 642 (1994). Generally, content-neutral laws impose burdens on speech without reference to the ideas or views expressed. *Id.* at 643; *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). To be content neutral, the government regulation of

expressive activity must be justified without reference to the content of the regulated speech. *Ward*, 491 U.S. at 791. Indeed: "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* So long as speaker distinctions are not a subtle means of exercising a content preference, they are not presumed invalid under the first amendment. *Turner Broadcasting*, 512 U.S. at 645.

¶ 34 In the case at bar, we agree with the State that the Internet disclosure provision is properly subject to intermediate scrutiny. The provision is part of a statutory scheme intended to prevent sex offenses against children and to protect the public. The statutory scheme protects the public in two ways: it provides crucial information to law enforcement agencies monitoring the movement of sex offenders, and it disseminates the information to the public. *Cornelius*, 213 Ill. 2d at 194 (and cases cited therein). Admittedly, the provision does single out sex offenders as a category of speakers. However, the face of the provision makes no reference to, and the purpose of the provision has nothing to do with, the content of their speech.

¶ 35 Defendant concedes that the Internet disclosure provision "does not directly ban any speech." However, according to defendant, "if the hostility of the public against scarlet-letter-tagged sex offenders who speak on the Internet drives the speakers away, into silence, the effect is the same: the outcome looks like a ban." We cannot agree. "The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Smith v. Doe*, 538 U.S. 84, 99 (2003). Although the public availability of the website information may have a lasting and painful impact on sex offenders, these consequences flow not from the statutory registration and notification scheme but from the fact of conviction, which is already a matter of public record. See *id.* at 103. Therefore, we conclude that the disclosure provision is content neutral and, accordingly, is subject to intermediate scrutiny.

¶ 36 In the first amendment speech context, intermediate scrutiny is articulated in several similar forms. Generally, to survive intermediate scrutiny, a content-neutral regulation of protected speech (1) must serve or advance a substantial governmental interest unrelated to the suppression of free speech and (2) must not burden substantially more speech than necessary to further that interest—or in other words, it must be narrowly tailored to serve that interest without unnecessarily interfering with first amendment freedoms. See *Turner Broadcasting*, 512 U.S. at 662; *Members of the City Council*, 466 U.S. at 804-05.

¶ 37 The State asserts that the purpose of the Internet disclosure provision "is to protect the public from the danger of recidivist sex offenders, which is a substantial government interest." Defendant and *amici* are correct to agree that this is a legitimate interest. Generally, "reducing crime is a substantial government interest." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 435 (2002). More particularly: "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982); accord *People v. Huddleston*, 212 Ill. 2d 107, 132-33 (2004) (and cases cited therein). "Although there is considerable debate over the degree to which treatment of sex offenders may be effective, it *is* clear that state legislatures may respond to what they reasonably perceive as a 'substantial risk of recidivism.' " (Emphasis in original.) *Huddleston*, 212 Ill. 2d at 138 (quoting *Smith*, 538 U.S. at 103). Since 1996, every state in the nation has had

a law providing for mandatory registration of sex offenders and corresponding community notification. *Smith*, 538 U.S. at 89-90. Thus, the remaining issue is whether the disclosure provision advances this interest in conformance with first amendment principles.

¶ 38 Defendant and *amici* contend that the statutory scheme for Internet disclosure deters or chills substantially more speech than is necessary to further the governmental interest. For example, defendant posits that juvenile sex offenders "have a low risk of reoffending and a high potential for rehabilitation due to their continuing brain development." Therefore, defendant argues, the application of the disclosure provision to juvenile sex offenders "renders it substantially overbroad" in violation of the first amendment. However, as we earlier explained, public information regarding juvenile sex offenders is much more restricted than information regarding adult sex offenders and is available only to a very limited group of people. See *Konetski*, 233 Ill. 2d at 203; *J.W.*, 204 Ill. 2d at 75. Further, juvenile sex offenders can petition for termination of registration after two years. 730 ILCS 150/3-5(c) (West 2014). This statutory qualification for juvenile sex offenders shows the legislative intent to avoid burdening substantially more speech than necessary to further its governmental interest.

¶ 39 Defendant next argues that, "[b]eyond the issue of juvenile offenders," the Internet disclosure provision nonetheless "applies to far too many people, in general." Defendant argues that the provision applies to all sex offenders "without conducting any individualized risk assessment, so that sex offenders with no risk to reoffend are included alongside high-risk offenders. Besides being poor policy in general, this makes the speech burdens at issue here dramatically overbroad." Citing *Whole Woman's Health v. Hellerstedt*, 579 U.S. ___, ___, 136 S. Ct. 2292, 2310 (2016), defendant contends that this court has an independent duty to assess this issue while engaging in our constitutional analysis.

¶ 40 We reject defendant's characterization of the Internet disclosure provision as "poor policy." "Our role is not to determine how wise legislation may be, but rather to determine its constitutionality." *People v. J.S.*, 103 Ill. 2d 395, 407 (1984). Exercising our independent judgment of the facts bearing on an issue of constitutional law, it is our task in the end to decide whether the legislature has violated the constitution. *Whole Woman's Health*, 579 U.S. at ___, 136 S. Ct. at 2310; *Sable Communications of California, Inc. v. Federal Communications Comm'n*, 492 U.S. 115, 129 (1989). Where a party's objections are essentially questions of policy, they are more appropriately directed to the legislature than to this court. *In re A.A.*, 2015 IL 118605, ¶ 27.

¶ 41 Regarding the lack of an individualized risk assessment for sex offenders, the legislature is entitled to "conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism." *Smith*, 538 U.S. at 103; accord *Huddleston*, 212 Ill. 2d at 138. Although we exercise independent judgment on issues of constitutional law, the legislature is in a better position than the judiciary to gather and evaluate data bearing on complex problems. *Alameda Books*, 535 U.S. at 440; *Turner Broadcasting*, 512 U.S. at 665-66 (opinion of Kennedy, J., joined by Rehnquist, C.J., and Blackmun and Souter, JJ.).

¶ 42 Further, it must be remembered that under the narrow-tailoring requirement of intermediate scrutiny, the content-neutral speech regulation need not be the least restrictive or intrusive means of advancing the government's content-neutral interest. Rather, the narrow-tailoring requirement is satisfied so long as the law promotes a substantial governmental interest that would be achieved less effectively absent the law. *Turner*

*Broadcasting*, 512 U.S. at 662; *Ward*, 491 U.S. at 798-99. Here, it is undeniable that the Internet disclosure provision directly and effectively serves the State's substantial interest in protecting the public from recidivist sex offenders. Absent this provision, this interest would be served less well. See *Ward*, 491 U.S. at 800.

¶ 43    Defendant also argues that the Internet disclosure provision applies "to too much speech." In declaring the provision unconstitutional, the circuit court found that the provision "has no limitations on the type of speech or communication which the offender is required to report and register, regardless of whether that speech is in any way related to the legitimate purpose" of the provision. According to defendant, the "immense sweep" of the provision goes "beyond the State's purpose of protecting the public from potential sex offenses: the State's purpose is a needle in a haystack of burdened speech."

¶ 44    We disagree. It must be remembered that under intermediate scrutiny, a content-neutral statute is not overbroad when it burdens speech, but only when it burdens substantially more speech than necessary to advance its substantial governmental interest. *Turner Broadcasting*, 512 U.S. at 662; *Members of the City Council*, 466 U.S. at 804-05. Similarly, first amendment overbreadth is ultimately found only when a substantial number of a statute's applications to protected speech are unconstitutional in relation to the statute's plainly legitimate sweep. *Hicks*, 539 U.S. at 119-20; *Broadrick*, 413 U.S. at 612-13. Thus, whether a statutory standard produces overbreadth requiring invalidation of the statute may depend on the relative breadth of the statute's coverage. See *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 592 (2002) (Kennedy, J., concurring in the judgment, joined by Souter and Ginsburg, JJ.).

¶ 45    In the case at bar, we conclude that the Internet disclosure provision advances the substantial governmental interest of preventing sex offenses against children and protecting the public from the danger of recidivist sex offenders. The disclosure provision identifies the locations on the Internet to which the sex offender has transferred expressive material from his computer or has otherwise engaged in communication. These disclosures empower the public, if it wishes, to make the informed decision to avoid such interactions. The information required for the public to protect itself is broad because any communication by a sex offender with the public is related to the statutory purpose.

¶ 46    We observe that federal district courts have declared sex offender Internet disclosure requirements overbroad. In *Doe v. Nebraska*, 898 F. Supp. 2d 1086, 1121 (D. Neb. 2012), the court opined: "Blogs frequently, and perhaps mostly, involve discussion of matters of public concern. Blogs are by their nature open to the public and pose no threat to children. *** A site publicly available on the Internet poses no threat to children—after all, every police officer in the world can see it." Similarly, in *White v. Baker*, 696 F. Supp. 2d 1289, 1310 (N.D. Ga. 2010), the court opined:

> "This internet communication form does not reasonably present a vehicle by which a sex offender can entice a child to have illicit sex. *** In the Court's experience, these communications are those that occur privately in direct email transmissions *** and in instant messages. They generally do not occur in communications that are posted publicly on sites dedicated to discussion of public, political, and social issues."

As seen, these courts failed to recognize the breadth necessary to protect the public.

¶ 47    Additionally, the court in *Doe v. Harris*, 772 F.3d 563, 578-82 (9th Cir. 2014), found that the California Internet disclosure requirement was overbroad because public disclosure and

- 12 -

notification would chill speech. However, the court failed to engage in the comparative analysis of whether the chilling effect was substantially broader than that required by the statutory purpose.

¶ 48    Also, despite its plainly legitimate sweep, the Internet disclosure provision is tailored to avoid chilling more speech than necessary, or in other words, to lessen the number of unconstitutional applications. Initially, the provision does not require disclosure of individuals with whom sex offenders interact, if any. Further, as we earlier observed, the provision does not operate as a prior restraint. Rather, it requires the sex offender to disclose his or her Internet identities and the websites to which he or she uploaded content or posted messages or information during the previous registration period up to and including the day he or she registers. While this retroactive operation does not remove the provision from first amendment scrutiny, it certainly constitutes an example of narrow tailoring. See *Doe v. Shurtleff*, 628 F.3d 1217, 1225 (10th Cir. 2010) (upholding Utah's sex offender Internet disclosure statute against first amendment overbreadth challenge). Further, the provision requires disclosure only of Internet identities and websites through which a sex offender has communicated with others. Thus, the legislature "did no more than eliminate the exact source of the evil it sought to remedy." *Members of the City Council*, 466 U.S. at 808. Indeed, any attempt to more narrowly tailor the disclosure provision to exclude "innocent" subjects, whatever they may be and however chosen, would defeat the purpose of the provision.

¶ 49    We hold that the Internet disclosure provision survives intermediate scrutiny because it advances a substantial governmental interest without chilling more speech than necessary. Therefore, defendant has failed to establish that the Internet disclosure provision of section 3(a) of the Registration Act is facially unconstitutional because it is substantially overbroad in violation of the first amendment.

¶ 50                                    III. CONCLUSION

¶ 51    For the foregoing reasons, the order of the circuit court of McLean County is reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 52    Reversed.

¶ 53    Cause remanded.