2020 IL 124965

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124965)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
PATRICK A. LEGOO, Appellant.

*Opinion filed June 18, 2020.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Chief Justice Anne M. Burke.

**OPINION**

¶ 1      Defendant, Patrick A. Legoo, was convicted of being a child sex offender in a public park in violation of section 11-9.4-1(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-9.4-1(b) (West 2016)). On appeal, defendant contended his

conviction must be reversed because an exception to criminal liability contained in section 11-9.3(a-10) of the Code (720 ILCS 5/11-9.3(a-10) (West 2016)), allowing a child sex offender to be present in a public park when accompanied by his own child, should be read into section 11-9.4-1(b). The appellate court rejected defendant's contention and affirmed his conviction. 2019 IL App (3d) 160667. For the reasons that follow, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        Defendant was charged in the circuit court of La Salle County with the misdemeanor offense of being a child sex offender in a public park (720 ILCS 5/11-9.4-1(b) (West 2016)). At his bench trial, Mendota Police Department detective sergeant David Lawson testified that he was attending his grandson's T-ball game at Strouss Park in Mendota when he saw defendant in the park. Lawson was familiar with defendant from prior contacts and believed he was a registered sex offender. After observing defendant ride his bicycle through an area between three baseball diamonds, Lawson called the Mendota Police Department to report defendant's presence in the park.

¶ 4        Officer Kevin Corrigan testified that he went to defendant's residence later that night. When asked about his presence in the park, defendant stated he went there to look for his son. The State also submitted a certified copy of defendant's 2006 conviction of criminal sexual abuse.

¶ 5        After the State rested, defendant's son, C.G., testified that he was watching a baseball game in the park when defendant arrived and told him to go home. C.G. testified that he refused to leave because he wanted to watch the rest of the baseball game. Defendant then left the park.

¶ 6        Defendant testified that he rode his bicycle to the park looking for C.G. Defendant found him sitting on the bleachers watching a baseball game with a girl. Defendant told C.G. to come home because it was getting late. C.G. replied that he would come home after the game. After telling C.G. that he would be in trouble if he did not come home, defendant left the park. Defendant testified that his fiancée was out of town and no one else was available to retrieve C.G. from the park that night. Defendant testified that he spent less than five minutes in the park.

¶ 7 Following the close of evidence, defendant's attorney argued that it was a necessity for defendant to go into the park to get his son. Counsel argued no one else was available to retrieve defendant's son that night. Defense counsel also claimed that the statutes prohibiting the presence of child sex offenders in public parks were in conflict because section 11-9.4-1(b) did not include the exception to criminal liability contained in section 11-9.3(a-10).

¶ 8 The trial court rejected defendant's necessity defense, stating it was not applicable to these facts. The court then observed that section 11-9.3(a-10) of the Code (720 ILCS 5/11-9.3(a-10) (West 2016)), providing for a felony offense, permits a child sex offender to be present in a public park and communicate with a child under 18 years of age if the offender's minor child is also present in the park. The misdemeanor statutory provision at issue, however, strictly forbids child sex offenders from being present in public parks. The trial court commented, "[a]pparently, one, you just can't be in the park. The second one, if you want to get away from the felony, you can approach, but only if it's a kid. That's ridiculous, but it's the way it is." The trial court, therefore, found defendant guilty of the charged offense. Defendant was subsequently sentenced to 30 days in jail and 2 years' conditional discharge. The trial court stayed execution of the sentence pending appeal.

¶ 9 On appeal, defendant argued that his conviction should be reversed because the exception contained in section 11-9.3(a-10) must be read into section 11-9.4-1(b). 2019 IL App (3d) 160667, ¶ 8. The appellate court acknowledged a certain amount of "overlap" between the two statutes but maintained that they also have important differences, including in the offenders they apply to, the conduct prohibited, and the applicable penalties. 2019 IL App (3d) 160667, ¶ 13. The appellate court concluded that, "[w]hile this statutory scheme may not be the cleanest means of achieving its desired end, there is no reason to read the exception from section 11-9.3(a-10) into section 11-9.4-1(b) as [defendant] requests." 2019 IL App (3d) 160667, ¶ 13. The appellate court, therefore, affirmed defendant's conviction. 2019 IL App (3d) 160667, ¶ 16.

¶ 10 We allowed defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2018)).

¶ 11                                            II. ANALYSIS

¶ 12        On appeal to this court, defendant renews his claim that the exception to criminal liability contained in section 11-9.3(a-10) must be read into section 11-9.4-1(b). According to defendant, the statutory scheme and history evince a legislative intent to include the exception from section 11-9.3(a-10) in section 11-9.4-1(b), despite the legislature not explicitly providing for any exception to liability in section 11-9.4-1(b). Defendant further argues that, if the exception is not included in section 11-9.4-1(b), the provision is unconstitutional because it violates the fundamental right of parents to raise and care for their children. Defendant, therefore, concludes that this court should read the exception into section 11-9.4-1(b) both as a matter of statutory construction and to avoid finding the statute unconstitutional.

¶ 13        The State responds that the plain language of section 11-9.4-1(b) does not contain any exception to criminal liability for offenders when their children are present. Rather, the plain language of the statute reflects the legislature's clear intent to impose a flat ban on the presence of child sex offenders in public parks. The legislature did not simply forget to include the exception in section 11-9.4-1(b). The State also maintains that defendant has not cited any precedent holding that the constitutional right of parents to raise and care for their children necessarily includes taking their children to a public park.

¶ 14        The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Pearse*, 2017 IL 121072, ¶ 41. The best indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *In re Hernandez*, 2020 IL 124661, ¶ 18. When the statutory language is clear and unambiguous, we will apply it as written without resort to aids of statutory construction. *People v. Williams*, 2016 IL 118375, ¶ 15. We may not depart from the plain language and meaning of a statute by reading into the statute exceptions, limitations, or conditions that the legislature did not express. *People v. Dupree*, 2018 IL 122307, ¶ 31. The construction of a statute is reviewed *de novo*. *People v. Manning*, 2018 IL 122081, ¶ 16.

¶ 15        In this case, defendant was convicted of violating section 11-9.4-1(b) of the Code. Section 11-9.4-1(b) states:

"It is unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on real property comprising any public park." 720 ILCS 5/11-9.4-1(b) (West 2016).

An initial violation of section 11-9.4-1 is a Class A misdemeanor, and a second or subsequent violation is a Class 4 felony. 720 ILCS 5/11-9.4-1(d) (West 2016).

¶ 16 We recently construed section 11-9.4-1(b) in *People v. Pepitone*, 2018 IL 122034. In that case, the defendant was charged with violating section 11-9.4-1(b) after he was found walking his dog in a public park. *Pepitone*, 2018 IL 122034, ¶ 4. The defendant was convicted of the offense and contended on appeal that the statute was facially unconstitutional on due process grounds. *Pepitone*, 2018 IL 122034, ¶ 13.

¶ 17 In rejecting the defendant's argument on that issue, this court construed the plain language of section 11-9-4.1(b), concluding "[t]he statute, then, completely bars sex offenders who have targeted children from public parks." *Pepitone*, 2018 IL 122034, ¶ 18. We explained that the statute "makes the status of the defendant an element of the offense" and prohibits a convicted child sex offender's knowing presence in a public park. *Pepitone*, 2018 IL 122034, ¶ 26.

¶ 18 The plain language of section 11-9.4-1(b) does not contain any express exception. Rather, as we held in *Pepitone*, the statutory language imposes a flat ban on certain sex offenders being present in public parks.

¶ 19 Defendant, nonetheless, contends that we should read the exception to criminal liability found in section 11-9.3(a-10) into section 11-9.4-1(b). Section 11-9.3(a-10) provides that

"[i]t is unlawful for a child sex offender to knowingly be present in any public park building, a playground or recreation area within any publicly accessible privately owned building, or on real property comprising any public park when persons under the age of 18 are present in the building or on the grounds and to approach, contact, or communicate with a child under 18 years of age, *unless the offender is a parent or guardian of a person under 18 years of age present in the building or on the grounds*." (Emphasis added.) 720 ILCS 5/11-9.3(a-10) (West 2016).

A violation of section 11-9.3 is a Class 4 felony. 720 ILCS 5/11-9.3(f) (West 2016).

¶ 20 Defendant argues that the legislature intended for sections 11-9.3(a-10) and 11-9.4-1(b) to be read together to protect children from convicted sex offenders while also preserving sex offenders' parental rights. According to defendant, sections 11-9.3(a-10) and 11-9.4-1(b) are "inextricably intertwined," and the legislature intended to include in section 11-9.4-1(b) the exception to criminal liability applicable when a child sex offender is present in a park with his or her minor child. Defendant maintains that, as written, the two statutes conflict because section 11-9.4-1(b) completely bars certain sex offenders from parks while section 11-9.3(a-10) provides an exception to criminal liability if the offender's minor child is present.

¶ 21 We agree with the appellate court that, while the statutes may overlap, they also differ in important respects. First, the statutory provisions apply to different people. Section 11-9.4-1 begins by incorporating the definition of "child sex offender" from section 11-9.3(d) but then carves out specific exceptions to that definition. See 720 ILCS 5/11-9.4-1(a) (West 2016) (stating " '[c]hild sex offender' has the meaning ascribed to it in subsection (d) of Section 11-9.3 of this Code, but does not include as a sex offense under paragraph (2) of subsection (d) of Section 11-9.3, the offenses under subsections (b) and (c) of Section 11-1.50 or subsections (b) and (c) of Section 12-15 of this Code"). As we observed in *Pepitone*:

> "Section 11-9.4-1(b) does not include in its definition of 'child sex offender' persons convicted of 'Romeo and Juliet' criminal sexual abuse under sections 11-1.50(b) and (c). See 720 ILCS 5/11-9.4-1(a) (West 2016); 96th Ill. Gen. Assem., Senate Proceedings, Mar. 16, 2010, at 55 (statements of Senator Althoff) (stating that the bill that became section 11-9.4-1 'excludes those convicted of criminal sexual abuse involving consensual sex when the accused is under seventeen and the victim is between nine and sixteen years of age and when the victim is thirteen to sixteen years of age and [the] accused is less than five years older')." *Pepitone*, 2018 IL 122034, ¶ 29.

Thus, in enacting section 11-9.4-1(b), the legislature considered section 11-9.3 and determined that certain individuals falling within the prohibition of that section would not also be subject to section 11-9.4-1(b).

¶ 22   Second, the statutory provisions prohibit different conduct. Section 11-9.4-1(b) prohibits certain sex offenders from entering or being present in public parks. 720 ILCS 5/11-9.4-1(b) (West 2016). In contrast, section 11-9.3(a-10) criminalizes the act of approaching, contacting, or communicating with a minor while in a public park unless the offender's minor child or ward is also present. 720 ILCS 5/11-9.3(a-10) (West 2016). Indeed, after observing that section 11-9.3(a-10) is almost identical to the former section 11-9.4(a), this court held "[s]ection 11-9.4(a) did not criminalize sex offenders' mere presence in public parks but rather specific conduct by sex offenders—approaching, contacting, or communicating with minors." *Pepitone*, 2018 IL 122034, ¶¶ 27-28. Sections 11-9.3(a-10) and 11-9.4-1(b) are, therefore, aimed at different conduct.

¶ 23   And third, the provisions impose different punishments. Section 11-9.4-1 provides that an initial violation is a Class A misdemeanor (720 ILCS 5/11-9.4-1(d) (West 2016)), while a violation of section 11-9.3 is a Class 4 felony. 720 ILCS 5/11-9.3(f) (West 2016). Thus, as we held in *Pepitone*, the legislature "clearly attempted to limit the application of section 11-9.4-1(b) and its penalty." *Pepitone*, 2018 IL 122034, ¶ 29.

¶ 24   The harsher punishment for a violation of section 11-9.3(a-10) is justified by the greater threat to public safety posed by the conduct prohibited in that section, involving a child sex offender actively approaching, contacting, or communicating with a minor in a public park. Given the harsher punishment, the legislature may have determined that an exception to criminal liability is appropriate for that offense when an offender's minor child is present. The exception may account for an innocent explanation for a defendant's conduct. In contrast, the prohibition on simply being present in a public park under section 11-9.4-1(b) is essentially a preventative measure. See *Pepitone*, 2018 IL 122034, ¶ 31 (holding that section 11-9.4-1(b) is rationally related to the goal of denying certain offenders the opportunity to reoffend). When viewed as a preventative measure, it makes sense that section 11-9.4-1(b) is drafted broadly without the exception contained in section 11-9.3(a-10).

¶ 25   In any case, while reasonable justifications exist for including the exception to criminal liability in section 11-9.3 and excluding it from section 11-9.4-1(b), we need not determine the legislature's precise reasoning for taking that action. A

comparison of section 11-9.4-1(b) and section 11-9.3 establishes several important differences in those statutes. Our review of the statutes does not reveal any legislative intent to include the exception to criminal liability from section 11-9.3(a-10) in section 11-9.4-1(b).

¶ 26 Ultimately, as the State maintains, defendant's argument reduces to an assertion that the legislature intended to include the exception to criminal liability from section 11-9.3(a-10) but forgot to include that language in section 11-9.4-1(b). We cannot add the language to section 11-9.4-1(b) on that basis, however. "No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *People v. Smith*, 2016 IL 119659, ¶ 28.

¶ 27 The legislature included the exception to criminal liability or similar language in several subsections of section 11-9.3. See 720 ILCS 5/11-9.3(a), (a-10), (b), (b)(2) (West 2016). The legislature also considered section 11-9.3 in enacting section 11-9.4-1(b), as shown by its incorporation of the definition of "child sex offender" from section 11-9.3(d) into section 11-9.4-1(a). Yet the legislature did not include any exception to criminal liability in section 11-9.4-1(b). Given these circumstances, we believe the absence of the exception from section 11-9.4-1(b) is a result of the legislature's considered judgment, not an oversight. We cannot conclude that the legislature simply forgot to include the exception in section 11-9.4-1(b), particularly when the legislature included that language where it intended in section 11-9.3.

¶ 28 Defendant also contends that we must add the exception to section 11-9.4-1(b) to avoid finding the statute unconstitutional. We note that the argument on this point is not particularly well developed. The argument was not raised in either the trial court or the appellate court. Before this court, defendant nonetheless contends that section 11-9.4-1(b) "deprives parents who have been convicted of child sex offenses of their constitutional right to the society of their children," if the exception to criminal liability contained in section 11-9.3(a-10) is not read into the statute. Defendant concludes that section 11-9.4-1(b), as written, violates his fundamental right to be present with his child.

¶ 29 Statutes are presumed to be constitutional. *People v. Webb*, 2019 IL 122951, ¶ 7. A party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. *Webb*, 2019 IL 122951, ¶ 7. We will construe a statute to uphold its constitutionality when reasonably possible. *People v. Minnis*, 2016 IL 119563, ¶ 21.

¶ 30 In this case, defendant's argument presents an as-applied challenge to section 11-9.4-1(b). An as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party. *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 31 Defendant correctly observes that parents have a fundamental liberty interest, protected by the due process clause, in raising and caring for their children. *In re N.G.*, 2018 IL 121939, ¶¶ 24-25. A parent's interest in the care, custody, and control of his or her children "is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The liberty interest includes the right of parents to direct the upbringing and education of their children and to make decisions involving the care, custody, and control of their children. *Troxel*, 530 U.S. at 65-66.

¶ 32 We observe, however, that there is no fundamental right for any person to be present in a public park. *Pepitone*, 2018 IL 122034, ¶ 14; *Doe v. City of Lafayette*, 377 F.3d 757, 772-73 (7th Cir. 2004) (holding that the right to enter public parks is not fundamental). Defendant does not cite any authority holding that he is entitled to take his child to a public park as part of his liberty interest in raising and caring for his child. If defendant does not have a fundamental liberty interest to be present in a park, it follows that he does not have a fundamental right to take his child to a park either.

¶ 33 Here, defendant argued at trial that it was necessary for him to enter the park to get his son because no one else was available to retrieve him that night. A necessity defense may be raised when the defendant's conduct is justifiable because he or she "was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2016). Under appropriate circumstances, defendant could raise a viable necessity defense to justify his act of entering the park in violation of section 11-

9.4-1(b). In this case, however, the trial court rejected that defense at trial. The trial court stated a necessity defense could not be applied to these facts. On appeal, defendant has not challenged the trial court's decision rejecting his necessity defense.

¶ 34     Defendant, therefore, failed to establish that it was necessary for him to enter the park to retrieve his son. Further, we note that, even if defendant did not have anyone else available to help retrieve his son from the park, he could have called the police department for assistance rather than entering the park himself in violation of section 11-9.4-1(b).

¶ 35     In sum, the facts here simply do not establish that section 11-9.4-1(b), as written, interfered with defendant's fundamental liberty interest in raising and caring for his child. Accordingly, defendant has not established that we must read the exception from section 11-9.3(a-10) into section 11-9.4-1(b) to avoid finding the statute unconstitutional as applied in this case.

¶ 36     In conclusion, we note that the trial court expressed concern about the confusion that arises in applying sections 11-9.3 and 11-9.4-1. The trial court explained that, "[w]hen it's sex offenders in the park, I get this conflicting statute argument all the time and nobody bothers to straighten it out for us." The appellate court also observed that the statutes may overlap to some extent and commented that the "statutory scheme may not be the cleanest means of achieving its desired end." 2019 IL App (3d) 160667, ¶ 13. We agree that the statutes, when read together, may appear to overlap in some situations. The offenders governed by the statutes and those responsible for their enforcement both certainly benefit from clear statutory provisions on this subject. Accordingly, we urge the legislature to review this matter and consider clarifying the statutory provisions.

¶ 37                                    III. CONCLUSION

¶ 38     For the above reasons, we conclude that the appellate court did not err in construing section 11-9.4-1(b) in accordance with its plain language. Section 11-9.4-1(b) completely bars certain sex offenders from being present in public parks. We, therefore, affirm the appellate court's judgment affirming defendant's

conviction for violating section 11-9.4-1(b) of the Code.

¶ 39       Affirmed.

¶ 40       JUSTICE GARMAN, dissenting:

¶ 41       Defendant was convicted of violating section 11-9.4-1(b) of the Criminal Code of 2012, which makes it "unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on real property comprising any public park." 720 ILCS 5/11-9.4-1(b) (West 2016). That subsection contains no exceptions; it is a complete bar on child sex offenders being present in a park. Section 11-9.3(a-10) provides that it is unlawful for a child sex offender to knowingly be present in a park "when persons under the age of 18 are present in the building or on the grounds and to approach, contact, or communicate with a child under 18 years of age, unless the offender is a parent or guardian of a person under 18 years of age present in the building or on the grounds." *Id.* § 11-9.3(a-10).

¶ 42       Section 11-9.3(d) defines a "child sex offender" as any person who has been charged under Illinois law or a substantially similar federal or state law of a listed sex offense or an attempt to commit a listed offense with a victim under 18 years of age and is convicted, found not guilty by reason of insanity, or subject to a finding not resulting in an acquittal. *Id.* § 11-9.3(d). Section 11-9.4-1 defines "child sex offender" by expressly adopting that definition but excluding Romeo and Juliet offenders. See *supra* ¶ 21 (citing *Pepitone*, 2018 IL 122034, ¶ 29).

¶ 43       We see from section 11-9.3(a-10) that a "child sex offender" cannot enter a park when children are present and talk with them unless his own child is also present. If his own child is present with him, he can not only be present at the park but can be present when other children are present and even talk to those other children. Section 11-9.4-1(b), however, says that he cannot knowingly be present in a park— whether children are there or not—unless his conviction is for one of the exceptions. The appellate court noted that "this statutory scheme may not be the cleanest means of achieving its desired end." 2019 IL App (3d) 160667, ¶ 13. I think the circuit court better described the statutory interplay: "That's ridiculous ***."

- 11 -

¶ 44　　　"When interpreting a statute, a court may always consider the consequences of construing the law one way or another and may always consider whether a particular interpretation of the statute will lead to absurd, inconvenient, or unjust results." *People v. Brown*, 2020 IL 124100, ¶ 30. The court "presumes that the legislature did not intend to create absurd, inconvenient, or unjust results." *People v. Gutman*, 2011 IL 110338, ¶ 12. "We view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.*; see also *People v. Botruff*, 212 Ill. 2d 166, 174-75 (2004) ("Because all provisions of a statutory enactment are viewed as a whole [citation], words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute [citations]."); *People v. Davis*, 199 Ill. 2d 130, 137 (2002) (" ' "It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. *** Thus, they should all be construed together." ' " (quoting *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 287 (1992), quoting 2A Norman J. Singer, Sutherland on Statutory Construction § 51.02, at 453 (Sands 4th ed. 1984))). "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Gutman*, 2011 IL 110338 ¶ 12.

¶ 45　　　Consider the following: a child sex offender's son asks to go to a nearby park. When the offender tells him he cannot, the child takes off running for the park. The offender gives chase and catches him two steps into the park. Because of this innocent conduct, the offender has violated section 11-9.4-1(b) and, if this is the first time, is guilty of a misdemeanor. If he brings the child into the park, however, and talks with another child while his child is on a swing several hundred feet away—a situation that the majority acknowledges poses a "greater threat to public safety" (*supra* ¶ 24)—the offender is excepted from criminal prosecution under section 11-9.3(a-10).

¶ 46　　　This analogy, as well as the facts of the case at bar, reveals the absurdity of the majority's interpretation. The General Assembly could not have intended to prevent all child sex offenders except Romeo and Juliet offenders from going to the park while creating an exclusion from the prohibition against talking with other children for child sex offenders who bring their children. Yes, the penalties are different, but only for the first offense. Under the majority's interpretation, a child sex offender who goes to a park while children are present and talks to a child, as long as his

- 12 -

own child is present, is only guilty of being present in the park and subject to a Class A misdemeanor the first time. Thereafter he is guilty of a Class 4 felony, the same as if he went to the park while children were present and talked to them without his own child present. The majority reasons that that "[t]he exception [in section 11-9.3(a-10)] may account for an innocent explanation for a defendant's conduct." *Supra* ¶ 24. It defies logic, however, to hold that the exception does not also apply to the less serious offense that the offender must necessarily commit to fall within the exception, especially considering that the punishment for a second or subsequent offense is the same Class 4 felony as the more serious offense from which he is excepted. I do not believe the General Assembly, in its "considered judgment" (see *supra* ¶ 27) intended this "ridiculous" result.

¶ 47 The more harmonious reading of the two statutes is this: a child sex offender, except a Romeo and Juliet offender, cannot go to the park. If he does, he commits a misdemeanor the first time and a felony thereafter. If a child sex offender, including a Romeo and Juliet offender, goes to a park where children are present and talks to a child, he gets no misdemeanor warning; the first offense is a felony. If, however, a child sex offender is a parent or guardian of a child under the age of 18, he may bring that child to the park and, while he is there with his child, talk with other children who are there. That means that he *may* enter and *may* knowingly be present at the park, because one cannot bring his child to the park without going himself. In order to effectuate the exception in section 11-9.3(a-10), it must be read into section 11-9.4-1(b)). If not, the exception becomes meaningless and superfluous, a result we are compelled to avoid. *Gutman*, 2011 IL 110338, ¶ 12.

¶ 48 Defendant also makes a constitutional argument. Of course, the court could avoid this question by reading section 11-9.3(a-10)'s exception into section 11-9.4-1(b). Instead, the majority interprets the statute in a way that potentially infringes on defendant's fundamental right to parent his child.

¶ 49 The majority relies on *People v. Pepitone*, 2018 IL 122034, ¶ 14, which held that one has no constitutional right to enter a park. From that decision, the majority infers that one has no right to bring one's child to the park. Without expressing an opinion as to whether that conclusion is correct, I note that that is not what happened here. Defendant did not bring his child to the park; he went to the park to retrieve his child, who was already present there. Finding one's child at play and telling the

child "it's time to come home" is one of the most basic exercises of parental control. The majority finds that there is no violation of defendant's constitutional right to parent his child by answering a question this case did not present. Moreover, the majority's suggestion that its interpretation does not interfere with defendant's right to parent because he could ask the police to retrieve his son for him is unrealistic; certainly the Mendota Police Department will not always have the time or manpower to send an officer to the park to tell defendant's son that it is time to go home.

¶ 50 For the reasons stated, I would read section 11-9.3(a-10)'s exception for parents present with their children into section 11-9.4-1(b)'s blanket prohibition on child sex offenders' presence in public parks to avoid the absurd result described above and to avoid reaching the constitutional question. Accordingly, I respectfully dissent.

¶ 51 CHIEF JUSTICE ANNE M. BURKE joins in this dissent.