# Illinois Official Reports

## Supreme Court

***People v. Howard*, 2017 IL 120443**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ARCHIE C. HOWARD, Appellant. |
| Docket No. | 120443 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Stephen Kouri, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Kerry J. Bryson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and John R. Schleppenbach, Assistant Attorneys General, of Chicago, of counsel), for the People. |

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 Following a bench trial in the circuit court of Peoria County, the defendant, Archie Howard, was convicted of violating section 11-9.3(b) of the Criminal Code of 1961 (720 ILCS 5/11-9.3(b) (West 2010)). This provision generally makes it unlawful for a child sex offender to knowingly loiter within 500 feet of a school while persons under the age of 18 are present.

¶ 2 Defendant appealed, arguing that the evidence presented at his trial was insufficient to prove him guilty of "loitering" within the meaning of the statute and that the statutory provision was unconstitutionally vague. The appellate court affirmed defendant's conviction, with one justice dissenting. 2016 IL App (3d) 130959.

¶ 3 For the reasons that follow, we affirm the judgment of the appellate court.

¶ 4 BACKGROUND

¶ 5 At trial, Peoria police officer Chris Lenover testified that on the morning of November 8, 2012, he was patrolling in the area near Irving Elementary School when he noticed a car parked "partially in" a T-intersection in front of the school. Lenover stated that the car was about 15 feet from school property and was facing toward the school. It was a weekday, and according to Lenover, there were 80 to 100 young children playing in the school yard.

¶ 6 Lenover ran the license plate on the vehicle and discovered that the car was owned by defendant, who was a registered child sex offender. Lenover approached the parked car, verified that the driver was defendant, and asked defendant what was going on. According to Lenover, defendant admitted that he was a child sex offender and that he knew he was not supposed to be around the school. Lenover asked defendant to exit the vehicle and informed him that he was under arrest for loitering within 500 feet of a school.

¶ 7 Following Lenover's testimony, the trial court took judicial notice of the fact that defendant is a child sex offender, having been convicted in 2003 of aggravated criminal sexual abuse involving a minor.

¶ 8 Defendant, testifying on his own behalf, stated that on the morning of November 8, 2012, he drove a friend, Tumika Jordan, to the grocery store and then to a McDonald's restaurant, where she purchased lunches for her grandchildren, who attended Irving Elementary School. Defendant then drove Jordan to the school so she could deliver the lunches. Defendant stated that he dropped Jordan off and then parked on a street in front of the school. Defendant remained inside the car while he waited for Jordan to return and spent the time balancing his checkbook and paying bills.

¶ 9 Defendant testified that when Officer Lenover approached him, he explained that he was waiting for a friend who had gone into the school to deliver lunch to her grandchildren. As they were speaking, Jordan returned to his vehicle and confirmed to Lenover that defendant

had given her a ride to her grandchildren's school so she could drop off lunch for them and that she had been inside the school for only four to five minutes. Defendant denied telling Lenover that he knew he was not supposed to be near the school.

¶ 10    After hearing this evidence, the trial court found that defendant was in his parked car within 500 feet of the school while children were present and that he was, therefore, "in direct violation" of section 11-9.3(b). The court further held that the "reason given for [defendant's] presence at the school has no merit in this case." Defendant was sentenced to 30 months' probation.

¶ 11    The appellate court affirmed defendant's conviction, with one justice dissenting. Interpreting section 11-9.3(b), the majority held that a child sex offender who is neither a parent nor a guardian of a school child "loiters," within the meaning of the statute, if he remains within "the restricted school zone for any purpose, lawful or unlawful, while children under age 18 are present." 2016 IL App (3d) 130959, ¶ 40. The court rejected defendant's contention that the statute is unconstitutionally vague and concluded that the evidence was sufficient to sustain his conviction. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015).

¶ 12                                    ANALYSIS

¶ 13    Section 11-9.3(b) of the Criminal Code provides:

"(b) It is unlawful for a child sex offender to knowingly loiter within 500 feet of a school building or real property comprising any school while persons under the age of 18 are present in the building or on the grounds, unless the offender is a parent or guardian of a student attending the school and the parent or guardian is: (i) attending a conference at the school with school personnel to discuss the progress of his or her child academically or socially, (ii) participating in child review conferences in which evaluation and placement decisions may be made with respect to his or her child regarding special education services, or (iii) attending conferences to discuss other student issues concerning his or her child such as retention and promotion and notifies the principal of the school of his or her presence at the school or has permission to be present from the superintendent or the school board or in the case of a private school from the principal." 720 ILCS 5/11-9.3(b) (West 2010).

¶ 14    In the case before us, defendant does not contend that he is a parent or guardian of a student at Irving Elementary School, and he does not dispute that he is a child sex offender (see 720 ILCS 5/11-9.3(d)(1) (West 2010) (setting forth the definition of child sex offender)). Nor does defendant contest that, at the time of his arrest, he knew he was situated within 500 feet of a school where persons under the age of 18 were present. Defendant maintains, however, that the evidence introduced at trial was insufficient to prove him guilty of knowingly "loitering" within the meaning of section 11-9.3(b).

¶ 15    Subsection (d)(11) of section 11-9.3 sets forth three statutory definitions of the term "loiter":

" 'Loiter' means:

(i) Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property.

(ii) Standing, sitting idly, whether or not the person is in a vehicle, or remaining in or around school or public park property, for the purpose of committing or attempting to commit a sex offense.

(iii) Entering or remaining in a building in or around school property, other than the offender's residence." 720 ILCS 5/11-9.3(d)(11) (West 2010).

¶ 16    It is clear from the evidence presented at trial that defendant was not proved guilty of "loitering" as defined in subsection (d)(11)(ii) or (d)(11)(iii), since there was no evidence presented at trial to show that defendant's presence near the school was for the purpose of committing or attempting to commit a sex offense. Nor was there evidence presented that he entered or remained inside a school building. Consequently, the only potential basis for finding defendant guilty of violating the statute is under the definition of "loiter" contained in subsection (d)(11)(i).

¶ 17    Defendant focuses on the term "sitting idly" in subsection (d)(11)(i). Defendant notes that immediately following this term is the phrase "whether or not the person is in a vehicle." Defendant argues that the presence of this phrase means that "sitting idly" is the "only vehicle-specific term" in the statute. That is, according to defendant, the term "sitting idly" is the only term in subsection (d)(11)(i) that applies to child sex offenders who are within a restricted school zone in vehicles. The terms "standing" and "remaining," on the other hand, have no application to child sex offenders who enter into the school zone in vehicles but, instead, apply only to child sex offenders who approach a school on foot.

¶ 18    Further, defendant maintains that he had a legitimate purpose for being within 500 feet of a school while children were present—he was waiting for his friend to deliver lunches to her grandchildren. Thus, according to defendant, he was not sitting "idly" in his car but was, instead, sitting with a legitimate purpose. Defendant contends, therefore, that the evidence was insufficient to prove him guilty of loitering. We disagree with defendant's reading of the statute and, therefore, reject his contention.

¶ 19    The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Blair*, 215 Ill. 2d 427, 442-43 (2005). Issues of statutory construction involve questions of law and are subject to *de novo* review. *People v. Alcozer*, 241 Ill. 2d 248 (2011).

¶ 20    The language "whether or not the person is in a vehicle" in subsection (d)(11)(i) is a phrase of expansion, not limitation. 720 ILCS 5/11-9.3(d)(11)(i) (West 2010). The phrase clarifies that the term "sitting idly" applies to both child sex offenders on foot as well as those in vehicles. Nothing in the legislature's use of the phrase suggests that the terms "standing" and "remaining" would not also apply to child sex offenders in vehicles.

¶ 21    In addition, the term "remaining" is separated from the term "sitting idly" by the word "or." The word "or" ordinarily is used in the disjunctive sense, meaning that the members of the sentence that it connects may be applied separately. *In re C.N.*, 196 Ill. 2d 181, 210-11 (2001). Because the term "remaining" is set off by the word "or," it constitutes an independent basis for finding that a child sex offender is loitering. See *id.*

¶ 22    To "remain" means "to stay in the same place." Webster's Third New International Dictionary 1919 (1993). A person need not have an illegitimate purpose for staying in one place in order to commit an act of "remaining." Thus, under the plain language of subsection

(d)(11)(i), a child sex offender may "loiter" within the meaning of section 11-9.3(b) simply by committing the act of knowingly remaining or staying within 500 feet of a school while persons under 18 are present. The offender's purpose for being near the school, under this definition, is not relevant.

¶ 23 Defendant contends, however, that if loitering is defined as the knowing act of "remaining" within a restricted school zone then section 11-9.3(b) is rendered unconstitutional. Defendant notes that subsection (d)(11)(i) does not contain a time limitation that defines the act of remaining in terms of a precise number of minutes. This omission, defendant argues, "prompts questions over the length of time one might stay in the same place before violating the statute" and, therefore, renders the statute unconstitutionally vague as applied to the facts of this case. We disagree.

¶ 24 Statutes are presumed to be constitutional, and the party challenging the validity of a statute has the burden to clearly establish its constitutional invalidity. *People v. Minnis*, 2016 IL 119563, ¶ 21. If reasonably possible, a court must construe a statute so as to affirm its constitutionality. *Id.* Our review of the constitutionality of a statute is *de novo*. *Id.*

¶ 25 Principles of due process require that a criminal statute " 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). In addition, the statute must provide standards that are sufficiently clear to avoid arbitrary and discriminatory enforcement and application by police officers, judges, and juries. *Id.* A statute violates due process on the basis of vagueness " 'only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts.' " *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 168 (1997) (quoting *People v. Burpo*, 164 Ill. 2d 261, 265-66 (1995)). Because defendant's challenge is as applied, we consider whether section 11-9.3(b) is vague as applied to the conduct for which defendant was prosecuted.

¶ 26 Ordinary people using common understanding can readily deduce that passing through a restricted school zone, and even dropping a person off at the school and then immediately leaving the area, are not acts of "remaining" and, thus, are not prohibited actions under section 11-9.3(b). On the other hand, it is equally clear that parking one's car in front of a school and waiting to pick someone up does constitute a prohibited act of "remaining." In addition, the act of parking one's car and waiting for someone provides a sufficiently definite standard for law enforcement officers and triers of fact such that the application of the statute is not rendered arbitrary or discriminatory. See, *e.g.*, *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672, 685 (E.D. Mich. 2015), *rev'd and remanded on other grounds*, 834 F.3d 696 (6th Cir. 2016). Defendant's act of knowingly parking his car and waiting for Jordan, while school children were visibly present fewer than 20 feet away, clearly falls within the statutory prohibition. We conclude, therefore, that the statute is not unconstitutionally vague as applied to the facts of this case.

¶ 27 Citing *City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality opinion), defendant also contends that, even if the term "remain" is not, in itself, vague, section 11-9.3(b) is nevertheless unconstitutionally vague. Defendant notes that, because loitering is defined under subsection (d)(11)(i) as simply the act of physically remaining within a restricted

school zone, the State is not required to prove that the child sex offender had an improper purpose for being near the school or that the offender committed any "overt act" while in the restricted area. Defendant argues that if the "statute is not interpreted to include such a purpose (or overt act) requirement, it fails under *Morales*." Again, we disagree.

¶ 28 In *Morales*, the United States Supreme Court considered a vagueness challenge to a Chicago antigang loitering ordinance. The ordinance provided that a violation would occur if the following took place. First, a police officer had to reasonably believe that at least one of two or more persons present in a "public place" was a member of a "criminal street gang." Second, the persons had to be "loitering," which the ordinance defined as "remain[ing] in any one place with no apparent purpose." Third, the officer had to then order all of the persons to "disperse" and remove themselves "from the area." Fourth, a person had to disobey the officer's order. If any person, whether a gang member or not, disobeyed the officer's order, that person would be guilty of violating the ordinance. (Internal quotation marks omitted.) *Id.* at 47.

¶ 29 A majority of the Court held that the ordinance was unconstitutionally vague because it failed to establish adequate guidelines to govern the enforcement and application of the law. *Id.* at 56, 60. In particular, the Court held that the "no apparent purpose" definition of loitering was unconstitutionally vague. The Court concluded that this standard was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene." *Id.* at 62. The ordinance therefore conferred an arbitrary and, thus, unconstitutional authority on law enforcement officers to determine what activities constituted loitering. *Id.* at 61.

¶ 30 *Morales* is distinguishable from the present case. While the ordinance in *Morales* applied to all persons, whether gang members or not, section 11-9.3(b) applies only to child sex offenders. Moreover, while the ordinance in *Morales* applied in all public places, section 11-9.3(b) applies only to areas within 500 feet of schools and only when persons under the age of 18 are present. Most importantly, however, the key holding of *Morales* has no relevance here. *Morales* holds that a law that defines loitering as remaining in one place for "no apparent purpose" is unconstitutionally vague. Subsection (d)(11)(i) does not define loitering in this way.

¶ 31 Defendant notes that the Court in *Morales* stressed the fact that Chicago's ordinance did not require any showing that the loitering was being committed for a harmful purpose and, in addition, stated that the ordinance would withstand constitutional scrutiny if it applied only to loitering with such a purpose. *Id.* at 62 (the requirement that officers reasonably believe that a group of loiterers contains a gang member would be constitutionally sufficient "if the ordinance only applied to loitering that had an apparently harmful purpose or effect"); see also *id.* at 57-58 (opinion of Stevens, J., joined by Souter and Ginsburg, JJ.) ("a number of state courts *** have upheld ordinances that criminalize loitering combined with some other overt act or evidence of criminal intent"); *id.* at 67 (O'Connor, J., concurring in part and concurring in the judgment, joined by Breyer, J.) ("the Court properly and expressly distinguishes the ordinance from laws that require loiterers to have a 'harmful purpose' "). This language, according to defendant, means that section 11-9.3(b) must either be read to include an improper purpose or be held unconstitutional.

¶ 32    The point of the language cited by defendant is that a statute that defines loitering as remaining in one place for "no apparent reason" (or similar terms) can be corrected and made constitutionally clear by changing the language to require proof of a harmful purpose. But a loitering statute may also be made clear by removing any reference to purpose at all. See *State v. Showens*, 845 N.W.2d 436, 445-46 (Iowa 2014) (noting that there is "less uncertainty" as to a statute's meaning when it simply prohibits sex offenders from remaining in a restricted zone for any reason). *Morales* simply does not speak to the type of statute at issue here, *i.e.*, one that defines loitering as simply remaining in one place, regardless of the reason. And *Morales* does not hold that such a statute is unconstitutionally vague.

¶ 33    The only constitutional argument raised by defendant in this appeal is that section 11-9.3(b) is vague as applied to the facts of this case. We reject this contention. The statute required the State to prove that defendant, a child sex offender, knowingly remained within 500 feet of school while persons under 18 years of age were present. We conclude that the evidence, which showed that defendant parked his car and waited four to five minutes for Jordan, was sufficient to meet this standard. Accordingly, we affirm the judgment of the appellate court.

¶ 34                                        CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 36    Appellate court judgment affirmed.