# Illinois Official Reports

## Supreme Court

---

### *People v. Webb*, 2019 IL 122951

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ISIAH J. WEBB, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD A. GRECO, Appellee. |
| Docket Nos. | 122951, 122952 cons. |
| Filed | March 21, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, the Hon. Alexander F. McGimpsey, Judge, presiding. |
| Judgment | Circuit court judgments affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>Michele Odorizzi, of Mayer Brown LLP, and Christopher W. Carmichael, of Henderson Parks, LLC, both of Chicago, for appellees. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion. |

## OPINION

¶ 1        Section 24-1(a)(4) of the unlawful use of weapons (UUW) statute (720 ILCS 5/24-1(a)(4) (West 2016)) provides, in part, that it is unlawful for a person to possess or carry a stun gun or taser in a vehicle or in public. In two separate cases, the circuit court of Du Page County held this provision unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II). The State appealed both judgments directly to this court pursuant to Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013), and we consolidated the cases for review. For the reasons that follow, we affirm the judgments of the circuit court.

¶ 2                                              BACKGROUND

¶ 3        Defendant Isiah J. Webb[1] was charged by misdemeanor complaint with violating section 24-1(a)(4) of the UUW statute (720 ILCS 5/24-1(a)(4) (West 2016)) after he was discovered carrying a stun gun in his jacket pocket while in his vehicle on a public street. Defendant Ronald A. Greco was charged by misdemeanor complaint with violating section 24-1(a)(4) after he was found carrying a stun gun in his backpack in a forest preserve, a public place. Both defendants filed motions to dismiss the charges, arguing section 24-1(a)(4) operated as a complete ban on the carriage of stun guns and tasers in public and was, for this reason, unconstitutional under the second amendment.

¶ 4        The circuit court agreed with defendants, in separate but identical orders. Citing *Caetano v. Massachusetts*, 577 U.S. ___, 136 S. Ct. 1027 (2016) (*per curiam*), the circuit court first concluded that stun guns and tasers are bearable arms entitled to the protection of the second amendment. The court then rejected the State's argument that, when read together with the Firearm Concealed Carry Act (Carry Act) (430 ILCS 66/1 *et seq.* (West 2016)), section 24-1(a)(4) of the UUW does not impose a complete ban on stun guns and tasers but, instead, creates a constitutionally permissible regulation. Finally, the circuit court concluded that section 24-1(a)(4)'s complete ban is unconstitutional under this court's decisions in *People v. Aguilar*, 2013 IL 112116, and *People v. Mosley*, 2015 IL 115872. The court explained: "Given the similarities in the nature and purpose of firearms and stun guns or tasers as instruments of personal self-defense, *** stun guns/tasers are entitled to a least as much protection under the Second Amendment as that afforded firearms, particularly since stun guns are by their specific nature far less lethal than firearms." The court then held that, "because stun guns and tasers are akin to firearms for purposes of Second Amendment analysis, because the Firearm Concealed Carry Act does not apply as a defense to stun gun or taser possession, and because the constitutional analysis in *Aguilar* and *Mosley* applies to the similar language of the offense at issue here, *** the portion of 720 ILCS 5/24-1(a)(4) relating to the ban on stun guns and tasers constitutes an unconstitutional infringement of the rights of citizens to bear arms under the Second Amendment." The court also found the portion of section 24-1(a)(4) held unconstitutional to be severable from the rest of the statute. These appeals followed.

---

[1]The initial criminal complaint and certain orders of the trial court in Webb's case spelled his first name "Isaiah," but his motion to dismiss, his trial counsel's entry of appearance, and his brief before this court spell his name as "Isiah."

ANALYSIS

At issue is the constitutionality of the portion of section 24-1(a)(4) of the UUW statute relating to stun guns and tasers. This provision states, in pertinent part:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

* * *

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser[2] or other firearm, except that this subsection (a) (4) does not apply to or affect transportation of weapons that meet one of the following conditions:

* * *

(iv) are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act[.]" 720 ILCS 5/24-1(a)(4)(iv) (West 2016).

Statutes are presumed to be constitutional, and courts must construe legislative enactments so as to affirm their constitutionality if reasonably possible. *People v. Howard*, 2017 IL 120443, ¶ 24. The party challenging the validity of a statute has the burden of clearly establishing its constitutional invalidity. *Id.* Whether a statute is unconstitutional presents a question of law, which we review *de novo*. *Id.*

The second amendment to the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court of the United States held that the second amendment secures for individuals the right to keep and bear arms and that, through the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV), this right is fully applicable to the states.

In determining whether a statutory provision violates the second amendment we first consider whether the provision imposes a burden on conduct that falls within the scope of the amendment. *People v. Chairez*, 2018 IL 121417, ¶ 21. If it does not, our analysis comes to an end. *Id.* Otherwise, we move to the second step of the inquiry, in which we must determine and apply the appropriate level of constitutional scrutiny. *Id.*

In this case, the State concedes that stun guns and tasers are bearable arms that fall within the protection afforded by the second amendment. We agree. In *Heller*, 554 U.S. at 582, the

---

[2]"A 'stun gun or taser', as used in this paragraph (a) means (i) any device which is powered by electrical charging units, such as, batteries, and which fires one or several barbs attached to a length of wire and which, upon hitting a human, can send out a current capable of disrupting the person's nervous system in such a manner as to render him incapable of normal functioning or (ii) any device which is powered by electrical charging units, such as batteries, and which, upon contact with a human or clothing worn by a human, can send out current capable of disrupting the person's nervous system in such a manner as to render him incapable of normal functioning[.]" 720 ILCS 5/24-1(a)(10) (West 2016).

Supreme Court rejected the idea that the second amendment extends only to "those arms in existence in the 18th century." Instead, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id. Heller* defined "bearable arms":

> "The 18th-century meaning is no different from the meaning today. The 1773 edition of Samuel Johnson's dictionary defined 'arms' as '[w]eapons of offence, or armour of defence.' 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978) (hereinafter Johnson). Timothy Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.' " *Id.* at 581.

¶ 11    Stun guns and tasers may be taken into one's hands and used both for defense or "to cast at or strike another." Clearly, stun guns and tasers are bearable arms within the meaning of the second amendment. *People v. Yanna*, 824 N.W.2d 241, 244 (Mich. Ct. App. 2012).

¶ 12    *Heller* also explained, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court made clear that an individual does not have a right to keep and carry any bearable arm "whatsoever in any manner whatsoever and for whatever purpose." *Id.* Specifically, the Court stated that the second amendment protects only the sorts of weapons that are in common use and "typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625.

¶ 13    Any attempt by the State to rebut the *prima facie* presumption of second amendment protection afforded stun guns and tasers on the grounds that the weapons are uncommon or not typically possessed by law-abiding citizens for lawful purposes would be futile. See *Caetano*, 577 U.S. at ___, 136 S. Ct. at 1027 (rejecting the contention that stun guns and tasers are dangerous and unusual because they were not in common use at the time the second amendment was enacted); *Ramirez v. Commonwealth*, 94 N.E.3d 809 (Mass. 2018) (holding that stun guns and tasers are arms within the protection of the second amendment); *Yanna*, 824 N.W.2d at 144 (holding that stun guns and tasers are protected by the second amendment and noting that "[h]undreds of thousands of Tasers and stun guns have been sold to private citizens"); *Caetano*, 577 U.S. at ___, 136 S. Ct. at 1033 (Alito, J., specially concurring, joined by Thomas, J.) ("While less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country."). Accordingly, the State concedes that stun guns and tasers are bearable arms that fall within the scope of the second amendment.

¶ 14    Despite this concession, the State nevertheless contends that the circuit court erred in declaring section 24-1(a)(4) unconstitutional. According to the State, the circuit court's error was in finding that section 24-1(a)(4) imposes a complete ban on the carriage of stun guns and tasers in public. The State asserts that the statute does not impose such a ban but, instead, merely regulates stun guns and tasers in a way that is constitutionally permissible under the second amendment. In support of this contention, the State points to the interplay between section 24-1(a)(4)(iv) of the UUW statute and the Carry Act (430 ILCS 66/1 *et seq.* (West 2016)).

¶ 15    Section 24-1(a)(4)(iv) of the UUW statute states that the prohibition set forth in that provision does not apply to weapons "carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1(a)(4)(iv) (West 2016). The Carry Act

provides, in part, that an applicant shall be issued a license to carry a "concealed firearm" if certain conditions are met. 430 ILCS 66/10 (West 2016). A "concealed firearm," in turn, means "a loaded or unloaded handgun carried on or about a person completely or mostly concealed from view of the public or on or about a person within a vehicle." *Id.* § 5. Finally, a "handgun" is defined as

> "any device which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas that is designed to be held and fired by the use of a single hand. 'Handgun' does not include:
>
> (1) a stun gun or taser[.]" *Id.*

¶ 16    The State acknowledges that, under the plain language of the Carry Act, a person cannot be issued a concealed carry license for a stun gun or taser. However, the State maintains this fact is of no moment. The State contends that, if a person is issued a concealed carry license for a handgun (*not* a stun gun or taser) and then carries his stun gun or taser in a completely or partially concealed manner and otherwise complies with any restrictions enumerated in the Carry Act, then he is carrying or possessing the stun gun or taser "in accordance" with the concealed carry law and, therefore, doing so legally under the UUW statute. In this way, according to the State, the UUW statute merely regulates the carriage of stun guns and tasers in public, as opposed to banning such carriage completely. We disagree.

¶ 17    When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25. The most reliable indicator of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Id.* "[T]he words and phrases in a statute must be construed in light of the statute as a whole, ' "with each provision construed in connection with every other section." ' " *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27 (quoting *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 291 (2004), quoting *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)). In addition, when construing our statutes, we presume the legislature did not intend to create absurd, inconvenient, or unjust results. *Coram v. State of Illinois*, 2013 IL 113867, ¶ 57.

¶ 18    Subparagraph (iv) of section 24-1(a)(4) excludes from the offense of UUW only those weapons that are carried or possessed "in accordance" with the Carry Act by a person who has been issued a concealed carry license. To be "in accordance" with a statute means to be in agreement or conformance with that law. See Webster's Third New International Dictionary 12 (1993). In our view, the most natural reading of the requirement that weapons be carried or possessed "in accordance" with the Carry Act is that the weapons, themselves, are of the type for which a valid concealed carry license may be issued under the Carry Act. Indeed, any other reading would lead to absurd results. Under the State's reading of the statute, as long as a person has a concealed carry license for a handgun, that person may carry any other weapon, including a rifle or shotgun, and still be acting "in accordance" with the Carry Act, even though the Carry Act is specifically limited to handguns and does not allow for the concealed carry of rifles or shotguns. We do not think the State's interpretation is what the legislature intended.

¶ 19    Our conclusion that stun guns and tasers cannot be carried or possessed "in accordance" with the Carry Act because a concealed carry license cannot be issued for those weapons is further supported by section 24-2(a-5) of the UUW statute. This provision states that section 24-1(a)(4) of the UUW statute does not "apply to or affect any person carrying a concealed

pistol, revolver, or handgun and the person has been issued a currently valid license under the Firearm Concealed Carry Act at the time of the commission of the offense." 720 ILCS 5/24-2(a-5) (West 2016).[3] When read together with section 24-1(a)(4), section 24-2(a-5) makes clear that only those weapons that can be licensed under the Carry Act are meant to be excluded from the reach of the UUW statute.

¶ 20   Given the foregoing, we reject the State's argument that section 24-1(a)(4) is merely a regulation of stun guns and tasers. Rather, that provision sets forth a comprehensive ban that categorically prohibits possession and carriage of stun guns and tasers in public.

¶ 21   The State does not contend that stun guns and tasers—which it concedes are bearable arms under the purview of the second amendment—may be subjected to a categorical ban. Because we have concluded that section 24-1(a)(4) constitutes a categorical ban on those weapons, that provision necessarily cannot stand. See *Aguilar*, 2013 IL 112116 (holding the provision of the aggravated unlawful use of a weapon statute that categorically prohibited the possession and use of any operable firearm for self-defense outside the home violated the second amendment); *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012); *Mosley*, 2015 IL 115872 (holding unconstitutional under the second amendment the portion of the aggravated unlawful use of a weapon statute that criminalized the possession of an uncased, loaded firearm on a public way). Accordingly, we hold the portion of section 24-1(a)(4) that prohibits the carriage or possession of stun guns and tasers is facially unconstitutional under the second amendment.

¶ 22                                    CONCLUSION
¶ 23   For the foregoing reasons, the judgments of the circuit court are affirmed.

¶ 24   Circuit court judgments affirmed.

---

[3]This subparagraph was added July 9, 2013, the same day the Carry Act became effective. See Pub. Act 98-63 § 155 (eff. July 9, 2013).