2025 IL App (1st) 242171-U

No. 1-24-2171B

THIRD DIVISION
January 22, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2023 CR 0292701 |
| | ) | |
| EDWARD CARTER, | ) | Honorable |
| | ) | Carl Boyd, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE D. B. WALKER delivered the judgment of the court.
Justice Martin specially concurred.
Presiding Justice Lampkin dissented.

**ORDER**

¶ 1    *Held*: We affirm the trial court's judgment denying defendant's motion for relief.

¶ 2    Defendant Edward Carter appeals the trial court's order denying his motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). On appeal, defendant contends that the trial court erred in denying his motion where the court had granted him pretrial release with a bond of $500,000 cash, but he remains detained because he could not afford to pay that amount. He argues that he is entitled to a new hearing on the conditions of release, pursuant to

section 110-5(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-5(e) (West 2024)). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 29, 2022, defendant was arrested and charged in three separate drug cases. Defendant was on parole when these offenses were committed. On January 29, 2023, defendant was indicted for attempted first-degree murder. He was also found to have violated the bail bond conditions in all three of his drug cases.

¶ 5      On April 11, 2023, the trial court held a hearing to determine bond in the defendant's attempted murder case. The State's proffer alleged that on January 9, 2023, around 10:20 a.m., the victim was at the Save On Food And Liquor store on Emerald Avenue in Chicago Heights, Illinois. The victim was in the parking lot with other individuals when he observed a black Chevy drive into the lot. The driver was an individual he knew as Ken Horter. The victim then observed defendant exit the passenger side of the vehicle. He had known defendant his entire life.

¶ 6      Defendant spoke with someone at the scene, and then the victim spoke to defendant. Defendant asked the victim, "what's up," and then indicated that he would kill the victim. The victim said he was not afraid of defendant and defendant pulled a weapon from his jacket pocket and started firing at the victim. The victim ran away, and defendant chased him while firing his weapon. The victim was shot in the stomach. A city employee heard the gunshots and observed defendant walking from the scene. The employee recorded a video of defendant walking from the scene. Defendant was identified by witnesses as the person in the video.

¶ 7      The victim was transported to a hospital where he spoke with the police. He identified defendant as the shooter. When shown a photograph taken from the video, the victim identified the person in the video as defendant. The victim recovered after multiple surgeries.

¶ 8    While processing the scene, officers recovered six spent shell casings—two in the parking lot, two in the roadway and two on the sidewalk. They also recovered surveillance video from the store. The video showed a black Chevy drive into the parking lot and defendant exiting on the passenger side of the vehicle. Defendant spoke with someone before speaking with the victim. Defendant then took a firearm from his jacket pocket and fired at the victim. The victim ran away with defendant chasing him.

¶ 9    An arrest warrant was obtained for defendant, but officers could not locate him. On February 15, 2023, defendant was arrested in Missouri.

¶ 10    The State's proffer also indicated that defendant "has three pending cases before the court, two of which are Class X drug-related offenses. In addition, the defendant is currently on parole. He has five prior felony convictions including 2014 aggravated battery of [*sic*] a firearm, received eight years Illinois Department of Corrections." The other convictions were for the offense of armed habitual criminal in 2006, aggravated discharge of a firearm in 2003, a 2000 narcotics conviction, and a 1995 conviction for aggravated battery and aggravated discharge. The State requested that defendant be held "mandatorily" without bail.

¶ 11    In response, defense counsel disputed the applicability of the mandatory no bail provision. He argued that the provision applied only if the proof was evident, and the presumption was great, that defendant committed the offense. Counsel argued that the State's proffer did not indicate "any kind of intent to kill anyone." Although the proffer used the word "kill," it did not quote specific language using that word. He also pointed to the proffer as alleging that the victim was not afraid of defendant. Counsel requested that bail be set at "100,000D on the new matters that are pending before the court."

¶ 12    After argument, the trial court issued its ruling.

"In determining the amount of bond necessary to assure the defendant's appearance as required as well as safety of the community, the court takes several factors into consideration. Number one is always the presumption of innocence. I look at the nature of the offense, the condition of the victim, whether the evidence shows as part of the offense there was violence utilized, also inquire[] whether or not at the time of the offense the defendant possessed or used a firearm. I look at the defendant's propensity for flight as well as his vocation."

¶ 13    After the hearing, the trial court signed the Prisoner Data Sheet indicating that defendant's bail was set in the amount of $500,000 cash. Under "Disposition," the court signed to indicate that defendant was to remain in custody and in the comments stated, "04/11/2023 Remain in Custody Continuance By Agreement." The next court date was set for June 5, 2023. Defendant remained in custody.

¶ 14    On August 9, 2024, defendant filed a motion to "modify the no bond order that was previously set and grant [him] pretrial release." He filed the motion pursuant to sections 110-7.5(b), 110-5(e), and 110-6(j) of the Code (725 ILCS 5/110-7.5(b), 5(e), 6(j) (West 2024)). Defendant alleged that on April 11, 2023, the trial court had ordered him released with the condition that he post a cash bond of $500,000. Defendant further alleged that on July 18, 2023, our supreme court "upheld the Constitutionality of the Pretrial Fairness Act[1] and ordered that bail reform provisions go into effect on September 18, 2023." Defendant argued that pursuant to

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, is commonly known as the Pretrial Fairness Act or the SAFE-T Act. Neither name, however, is the official title of the legislation. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4.

section 110-7.5, he is now entitled to a new hearing "to determine what conditions will reasonably ensure his appearance in court and the safety of any other person, and the likelihood of compliance with all conditions of pretrial release." He further argued, citing *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, that the State was barred from seeking pretrial detention.

¶ 15     That same day, the State filed a petition for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2024)).

¶ 16     On September 3, 2024, the trial court held a hearing on defendant's motion. Defense counsel argued that because the court did not order "mandatory no bail" for defendant, and instead ordered a cash bond of $500,000, the State did not meet its burden to show that the proof is evident or the presumption great that defendant committed the offense. Relying on *Watkins-Romaine*, counsel argued that defendant was entitled to a hearing on "what conditions can be imposed and not the monetary bond conditions." Counsel suggested that electronic monitoring would be an appropriate condition of release. He also argued that the State was prohibited from filing a petition for pretrial detention because such a petition would be untimely under *Watkins-Romaine*.

¶ 17     In response, the State argued that *Watkins-Romaine* was distinguishable where the trial court in that case explicitly found that the proof was not evident, nor the presumption great, that the defendant committed the offense. The State argued that the trial court in this case did not make such a finding because "it was your Honor's intention to keep this defendant in custody at the time that bond was set." Counsel noted that the bond amount set by the court was five times what defendant requested.

¶ 18     In its ruling, the trial court noted that it had heard the State's proffer when it set defendant's bond at $500,000 cash. The court stated that it "intentionally did not mention whether proof is evident or the presumption is great because the spirit of the bond that I set was to keep the

defendant in custody." At the time the bond was set, the court was aware that defendant had been convicted of five prior felonies. The court "did not believe that the defendant would post $500,000 cash." The court reasoned,

> "I looked at the nature and the circumstances of the offense. I considered the history and the character of the defendant. I heard about his family ties, his employment, [and] financial resources. I looked at the nature and the seriousness of this offense and the threat that the defendant posed to members of the community.
>
> I was mindful that there was a video of certain portions of this event that were captured. And I also am mindful of the fact that the defendant fled the scene and he was arrested in Missouri. So in this particular case I do find that the proof is evident or the presumption is great that the defendant has committed an eligible offense and the State has shown [*sic*] by clear and convincing evidence."

¶ 19    The trial court acknowledged that the issue before it was "whether or not there are any least restrictive conditions that would avoid the threat [defendant] poses." It found that no combination of conditions would ensure the safety of the community where defendant "allegedly chased and shot an unarmed person in the stomach." The court also had "serious reservations" about defendant's ability to comply with all conditions of pretrial release where he "fled to the state of Missouri following this act." The trial court determined that defendant should remain detained until further order of the court. The court signed an "Order After Detention Hearing" form in which it repeated its oral findings and reasoning.

¶ 20    On September 12, 2024, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). The motion presented essentially the same arguments made in his motion for pretrial release.

¶ 21   After a hearing, the trial court denied the motion. It reiterated that at the prior hearing, it found that the proof was evident and the presumption great that defendant committed the offense of attempted first-degree murder. Furthermore, defendant posed a real and present threat to the safety of the community where he chased the victim down the street and shot him in the stomach.

"I also found that the defendant had five prior felonies and three pending drug cases at the time of the shooting and also that the defendant had picked up this case while he was on parole. So for those reasons I did not feel as though electronic home monitoring, home confinement or curfew were appropriate because they could not mitigate the risk that this defendant would arm himself with another firearm, chase and shoot another citizen.

Moreover, I am mindful that this defendant following the shooting had fled to the state of Missouri where he was eventually arrested ***."

¶ 22   Defendant now appeals.

¶ 23                                    II. ANALYSIS

¶ 24   Under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), defendant's motion for relief serves as his argument on appeal. In his motion for relief, defendant argues that the trial court had no authority under the Code to hold a detention hearing in his case.

¶ 25   Defendant's contention requires us to interpret provisions of the Code. Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *People v. Giraud*, 2012 IL 113116, ¶ 6. The most reliable indicator of that intent is the language of the statute, given its plain and ordinary meaning. *Id.* We interpret words and phrases in the statute not in isolation but in light of other relevant provisions. *People v. Bradford*, 2016 IL 118674, ¶ 15. Where the language is unambiguous, it must be applied without resort to further aids of statutory

construction. *Id.* Statutory construction is a question of law that we review *de novo*. *People v. Howard*, 2017 IL 120443, ¶ 19.

¶ 26    Citing sections 110-7.5(b) and 110-5(e) of the Code, defendant argues that because he was ordered released with the condition that he post a cash bond, the trial court could only hold a hearing to determine whether other, nonmonetary conditions are available for his release. He further argues that the State is barred from filing a petition for detention.

¶ 27    Section 110-7.5(b), in its entirety, states:

"(b) On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5.

On or after January 1, 2023, any person, not subject to subsection (b), who remains in pretrial detention and is eligible for detention under Section 110-6.1 shall be entitled to a hearing according to the following schedule:

(1) For persons charged with offenses under paragraphs (1) through (7) of subsection (a) of Section 110-6.1, the hearing shall be held within 90 days of the person's motion for reconsideration of pretrial release conditions.

(2) For persons charged with offenses under paragraph (8) of subsection (a) of Section 110-6.1, the hearing shall be held within 60 days of the person's motion for reconsideration of pretrial release conditions.

(3) For persons charged with all other offenses not listed in subsection (a) of Section 110-6.1, the hearing shall be held within 7 days of the person's motion for reconsideration of pretrial release conditions." 725 ILCS 5/110-7.5(b) (West 2024).

¶ 28    Section 110-5(e) provides:

"(e) If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for the continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court ***, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of the defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." 725 ILCS 5/110-5(e) (West 2024).

¶ 29    To support his interpretation of these provisions, defendant cites *Watkins-Romaine*. Since he relies heavily on *Watkins-Romaine*, we will set forth the case in detail.

¶ 30    In *Watkins-Romaine*, the defendant was charged with attempted first degree murder, aggravated battery with a firearm and aggravated discharge of a firearm regarding an incident that occurred on November 23, 2022, around 10:18 p.m. An initial bond hearing was held and although the State requested a "no bail order," the trial court denied the request. It found that the State did not demonstrate that the proof was evident or the presumption great the defendant committed the charged offenses. The court ordered a bond of $350,000-D for the defendant and electronic monitoring until further notice of the court. The defendant was never released. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 5.

¶ 31    The amendments to section 110 of the Code became effective shortly after the court's ruling, and the defendant filed a petition for release from detention pursuant to sections 110-5 and 110-7.5. In response, the State filed a petition for pretrial detention. ¶¶ 6-7.

¶ 32    The trial court held a hearing on the petitions. The State's proffer indicated that the victim entered her vehicle after leaving her boyfriend's house. She noticed a white SUV parked next to her. As she drove, the SUV followed her and continued to follow her as she merged onto the interstate. While she drove in the right lane, gunfire shattered one of her windows. The victim observed a black male with short hair and facial hair firing at her from the white SUV. The victim sustained gunshot wounds to her legs and stomach. *Id.* ¶ 9.

¶ 33    The white SUV was owned by the defendant's girlfriend. She informed the police that she allowed her cousin to borrow the vehicle on the night in question, but he returned it by 10 p.m. Some of the DNA taken from the vehicle matched the defendant. *Id*. ¶ 10. The defendant's cell phone was also found to be in the vicinity of the shooting that night, and messages from his phone indicated a prior disagreement with the victim's boyfriend. Defendant legally purchased firearms and ammunition that matched the caliber and brand of casings found at the crime scene. *Id*. ¶ 11.

¶ 34    In arguing that the defendant should be detained, the State made conclusory statements that he posed a real and present threat to the community and no condition or combination of conditions could mitigate that threat. *Id*. ¶ 13.

¶ 35    The defendant's proffer indicated that while the victim described the shooter as a dark-skinned black male, the defendant was a light-skinned male. Also, the victim was unable to identify the defendant. The victim told police she believed the shooter was her ex-boyfriend, a person who was not the defendant. The DNA profiles taken from the SUV included four other unidentified

people. These profiles were found on the steering wheel, the gear shift lever, and the rearview mirror. *Id*. ¶¶ 15-16.

¶ 36    In contrast to the State's proffer, the defendant alleged that his girlfriend told police her cousin returned her car that night between 10 and 11 p.m. This cousin was killed in a homicide two days later. The defendant also disputed the relevance of cell phone location data, arguing that cell phones use the tower with the best signal and not necessarily the closest tower. *Id*. ¶ 17. He further alleged that there was no proof that defendant authored the text messages. *Id*. ¶ 18. The defendant owned a business, was the primary provider for his girlfriend and their two children, and had no prior felony convictions, no history of violence, and was not on parole at the time of the offense. *Id*. ¶ 19.

¶ 37    After the hearing, the trial court granted the State's petition to detain the defendant. It found that the State proved by clear and convincing evidence that the defendant committed the charged offenses. In its oral ruling, the trial court did not address the dangerousness element or whether any combination of conditions could mitigate the defendant's threat. In its written order, the court merely recited the fact that the defendant shot the victim five times, made threatening social media posts and sent text messages threatening to "shoot up" the victim's boyfriend's house. The defendant appealed. *Id*. ¶¶ 22, 24.

¶ 38    This appellate court found that the State's petition was untimely under section 110-6.1(c), citing *People v. Brown*, 2023 IL App (1st) 231890. Section 110-6.1(c) provides that a petition for detention "may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant." 725 ILCS 5/110-6.1(c) (West 2024). Since the State did not file its petition at the defendant's first court appearance, nor could it file the petition

within 21 days of release because the defendant was never released, our court ruled that the State's petition was untimely. *Id.* ¶ 34.

¶ 39    This court acknowledged that other appellate courts have resolved the timeliness issue differently. *Id.* ¶ 35. However, citing section 110-7.5(b), this court reasoned that "the legislature foresaw the need to account for pending cases with preexisting bail rulings" when the amended Code went into effect, and "it is telling that the prescribed procedure for individuals in [the] defendant's position is a hearing only to determine the reasons for the continued detention." *Id.* ¶ 39, citing 725 ILCS 5/110-7.5(b) (West 2024). Our court believed that it would be "immensely unfair to permit the State to have a second bite at the detention apple" when the trial court had granted the defendant release with pretrial conditions of bail and electronic monitoring at the initial bond hearing. *Id.* ¶¶ 45-46. This court determined that "the legislature did not intend to allow the State to file a petition for pretrial detention under the circumstances of [the] defendant's case and that the State's petition for detention was untimely." *Id.* ¶ 53. We remanded the cause for a hearing pursuant to section 110-5(e) only to determine why the defendant remained in custody and if conditions are available for his pretrial release. *Id.*

¶ 40    *Watkins-Romaine* is distinguishable. Unlike the defendant in that case, and contrary to his contention in this appeal, defendant here was not ordered released. Rather, the trial court's written disposition after the April 11, 2023 bond hearing clearly indicated that defendant was to remain in custody, with the matter continued by agreement to June 5, 2023. The trial court also never found, as did the trial court in *Watkins-Romaine* after the initial bond hearing, that the State failed to establish that the proof was evident or the presumption great that defendant committed the charged offense. The trial court explained that it "intentionally did not mention whether proof is evident or the presumption is great because the spirit of the bond that I set was to keep the defendant in

custody." The first paragraph of section 110-7.5(b), relied on by our court in *Watkins-Romaine*, applies to "any person who remains in pretrial detention *after having been ordered released with pretrial conditions*." (Emphasis added.) 725 ILCS 5/110-7.5(b) (West 2024).

¶ 41    Instead, we find the second paragraph of that provision applicable here. This paragraph states that "any person, *not subject to subsection (b)*, who remains in pretrial detention and is eligible for detention under Section 110-6.1 shall be entitled to a hearing according to the following schedule," and then refers to the offenses listed in subsection (a) of section 110-6.1. (Emphasis added.) *Id*. Since defendant in this case was not ordered released, he is a person "not subject to subsection (b)" by its plain and ordinary language.

¶ 42    The type of hearing to which defendant is entitled under the second paragraph is not specified. However, it is clear that this provision does not provide a hearing under section 110-5(e). A section 110-5(e) hearing applies to persons in pretrial detention "after having been ordered released with pretrial conditions." *Id*. § 110-5(e). Accordingly, reference to a section 110-5(e) hearing is found only in the first paragraph of the provision, which applies to persons who remain detained "after having been ordered released with pretrial conditions" *Id*. § 110-7.5(b).

¶ 43    Although the type of hearing in the second paragraph is not specified, the language used in the provision supports an intent to hold a section 110-6.1 detention hearing. The second paragraph explicitly refers to persons "eligible for detention under Section 110-6.1," and there are references to section 110-6.1 throughout. In essence, the purpose of a section 110-6.1 hearing is to encourage courts to rely on pretrial release by nonmonetary means, and to ensure that the court will order pretrial detention under Section 110-6.1 only if "it finds clear and convincing evidence that no condition or combination of conditions can reasonably ensure the effectuation of these goals." *Id*. § 110-2. Such a hearing makes sense for a person like defendant here, who was not ordered

- 13 -

released and remains detained with a monetary condition the trial court never expected him to satisfy.

¶ 44    Defendant, however, argues that the trial court could not hold a detention hearing in his case because the State's petition for detention, which initiates a detention hearing under section 110-6.1, was untimely under *Watkins-Romaine*.

¶ 45    We emphasize that *Watkins-Romaine* considered only the first paragraph of section 110-7.5(b), which refers to a hearing pursuant to section 110-5(e) and not a detention hearing. We have determined that the second paragraph, which is applicable here, allows for a section 110-6.1 detention hearing. Furthermore, according to the plain language of the second paragraph, a person "not subject to subsection (b), who remains in pretrial detention and is eligible for detention under Section 110-6.1 *shall be entitled to a hearing ***"* within a certain period of time if he or she files a motion for reconsideration of pretrial release conditions. (Emphasis added.) 725 ILCS 5/110-7.5(b) (West 2024). Therefore, such a hearing is initiated by the defendant's motion, not the State's verified petition.

¶ 46    Moreover, nothing in the provision prohibits the trial court from ordering detention after reconsidering a defendant's conditions for pretrial release, if it finds clear and convincing evidence that no condition or combination of conditions can reasonably effectuate the goals of pretrial release. It follows that the State may file a petition for detention in response to defendant's motion, which it did in this case. Under these circumstances, the timeliness of the State's petition is not an issue. The timing of the State's petition under section 110-6.1(c) is relevant when it is the State's petition that initiates the detention hearing.

¶ 47    Defendant also argues in his motion for relief that the trial court erred in ordering detention where the State did not prove by clear and convincing evidence that he was guilty of the offenses

charged, that he posed a real and present threat to the safety of any person or the community, and that no conditions or combination of conditions would reasonably ensure his compliance with conditions of pretrial release or his appearance in court. Defendant suggests that electronic monitoring would have been an appropriate condition of release.

¶ 48    To detain a defendant, the State must show, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific facts of the case, and (3) no conditions or combination of conditions exist that can mitigate this threat or defendant's willful flight. 725 ILCS 5/110-6.1(e) (West 2024).

¶ 49    Although appellate courts differ on the appropriate standard of review, we find that under any standard, the trial court's determination here was not erroneous.

¶ 50    The record shows that the court considered each of these elements and made specific findings accordingly. Based on the victim's testimony and video recordings, the court found that the proof is evident or the presumption great that defendant had committed the offense. Based on the fact that defendant chased the victim while shooting at him and he shot the victim in the stomach, the court found that defendant posed a real and present threat to the safety of others and the community. Finally, the trial court considered defendant's prior felony convictions, and the fact that he committed the present offense while on parole and then fled to Missouri. It determined that home confinement or electronic monitoring would not be appropriate conditions of release, given defendant's background. Defendant does not provide any argument, or citation to the record or authority, to challenge the trial court's determinations.

¶ 51                                    III. CONCLUSION

¶ 52    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 53    Affirmed.

¶ 54    JUSTICE MARTIN, specially concurring:

¶ 55    I concur in the disposition because I agree that the trial court properly denied Carter's motion for relief. I write separately, however, because Carter was initially ordered released with the condition of depositing monetary security. I further believe that the State's responsive petition for pretrial detention was proper, as was the trial court's granting of the State's petition.

¶ 56    As detailed above, Carter was arrested and charged prior to the effective date of Public Act 110-652 (eff. Jan. 1, 2023). Carter's initial bond hearing was held on April 11, 2023. The trial court ordered Carter released upon the condition of making a $500,000 monetary payment. Regardless of the trial court's superfluous comments regarding the "spirit of the bond" set, Carter was ordered released with the pretrial condition of posting a monetary security. However, Carter did not satisfy this monetary condition and was therefore never released from custody. As such, his situation was contemplated under the second category of 725 ILCS 5/110-7.5(b).

¶ 57    Illinois courts have held that a defendant so situated may either choose to remain subject to the prior monetary bond order or they may file a motion seeking a hearing to have their pretrial conditions reviewed anew. *People v. Rios*, 2023 IL App (5th) 230724, ¶ 16. When a defendant, such as Carter, elects to be considered for release under the Act, Illinois courts have generally held that the State may file a responding petition to detain. *E.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 8 ("the State may petition for the denial of pretrial release of defendants who were ordered released on bond but were still detained when the Act went into effect"), *People v. Earnest*, 2024 IL App (2d) 230390, ¶ 22; *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 27; *People v. Jones*, 2023 IL App (4th) 230837, ¶ 24; *People v. Gray*, 2023 IL App (3d) 230435, ¶ 15; see also *People v. Haisely*, 2024 IL App (1st) 232163, ¶ 22 (finding that the 21-day limit had not yet

run where the defendant remained in custody pursuant to an order requiring the posting of a monetary bond). But see *People v. Watkins-Romaine*, 2024 IL App (1st) 232478 (finding the State's petition for pretrial detention was untimely). Accordingly, following the reasoning in *Haisley* and *Whitmore*, I would find no error in the court hearing the State's responsive petition to detain in this case.

¶ 58    The record before us reflects that the trial court considered the nature and circumstances of the alleged offense, mitigating factors, and Carter's flight from the scene of the offense in finding that the proof is evident or the presumption great that Carter committed an eligible offense for pretrial detention. Further, the court found that Carter posed a threat and acknowledged that no combination of conditions would ensure the safety of the community. Lastly, the court noted its concerns about Carter's ability to comply with any conditions of pretrial release. Consequently, I agree that the trial court properly denied Carter's motion for relief.

¶ 59    PRESIDING JUSTICE LAMPKIN, dissenting:

¶ 60    I see no valid basis to distinguish *Watkins-Romaine* from the instant case and I would hold that, like in *Watkins-Romaine*, defendant is entitled to the hearing prescribed by section 110-7.5(b) of the Code and that the State's petition for pretrial detention was untimely. 725 ILCS 5/110-7.5(b) (West 2024). Accordingly, I must dissent.

¶ 61    Defendant received his first bail order on April 11, 2023, well before the effective date of the amended Code that now governs pretrial release. At that hearing, the trial court imposed a monetary bond of $500,000 cash. He was never released and never satisfied the monetary bond, which puts him squarely in the category of defendants described in section 110-7.5(b) of the Code. 725 ILCS 5/110-7.5(b) (West 2024).

¶ 62    This is the source of my first disagreement with the lead order, as it claims the trial court's written disposition that defendant was to "remain in custody" distinguishes this case from *Watkins-Romaine*. In *Watkins-Romaine*, we observed that the defendant was "ordered released on electronic monitoring, subject to the deposit of a monetary bond." *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 53. The lead order has elevated semantics over substance. The trial court's disposition in this case noted nothing more than a truism, an accurate statement of what a bail order is: an order that a defendant may be released, contingent upon the satisfaction of particular conditions, but should otherwise remain in custody. This is no different from *Watkins-Romaine* where the defendant remained in custody because he could not satisfy the monetary bond to be released. In both cases, the defendants remained in custody because they could not satisfy the monetary bond condition of their release, but they would have been released had they been able to do so.

¶ 63    The lead order also seizes upon the fact that the trial court never explicitly denied the State's request for a "no bail" order, whereas the trial court did so in *Watkins-Romaine*. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 5. This, too, is championing semantics over the reality of the thing itself. In the case at bar, the State asked for a "no bail" order. The trial court instead entered an order granting defendant bail provided he satisfy a $500,000 cash deposit, which was fifty times the amount defendant requested. Whether the trial court said it explicitly or not, it clearly did not grant the State's request because it, in fact, granted defendant bail. And I find it irrelevant that the trial court here later stated that its intent with a $500,000 cash bond was "to keep the defendant in custody," as if that somehow transmutes the bail order into a "no bail" order after the fact. The trial court's intent did not have the power to alter the fundamental nature of bail. Its $500,000 cash bail order meant that defendant could be released if he produced the requisite money. As unlikely as it might have been, there was no secret mechanism to keep defendant in

custody if a wealthy relative appeared, or a crowd-funding movement materialized. There was no system in place to stop defendant from walking out the doors of the Cook County Department of Corrections after he posted the money because that was not what the trial court "intended." This is because bail is not a tool of incarceration. It is meant to "insure the defendant's appearance and submission to the judgment of the court." *Bandy v. U.S.*, 81 S. Ct. 197, (1960).

¶ 64   Indeed, "[i]t would be unconstitutional to fix excessive bail to assure that a defendant will not gain his freedom." *Id.* (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). Thus, not only do I disagree that the trial court's statements have any bearing on the nature of defendant's bail order, but I am wary of the lead order's willingness to embrace the trial court's apparent admission that it used bail for an improper purpose.

¶ 65   Moreover, the lead order's position also forces us into an awkward and impossible interpretation of section 110-7.5(b) of the Code. That section reads, "On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2024). If defendant's bail order, which would have permitted him to be released had he satisfied the monetary bond, does not bring him underneath that section's language, I can only wonder to which class of defendant that section applies. What other mechanism of pretrial release and bail could section 110-7.5(b) possibly govern?

¶ 66   I must also note my disagreement with the special concurrence filed in this case. As I explained in *Watkins-Romaine*, I believe cases such as *Whitmore* and *Haisely* require a reading of the Code that its language cannot bear. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶¶ 37-39,

47-48. Thus, I cannot agree with the special concurrence's reliance on those cases and the outcome that follows.

¶ 67    In sum, defendant, like the defendant in *Watkins-Romaine*, was ordered released subject to the satisfaction of a monetary bond. Defendant was never released because he never satisfied the monetary bond. Once the amended Code went into effect, defendant was entitled to the procedural protections of section 110-7.5(b) of the Code and, like in *Watkins-Romaine*, the State's petition for pretrial detention was untimely because it was not filed at defendant's first appearance before a judge or within 21 calendar days after defendant's arrest and release. 725 ILCS 5/110-7.5(b) (West 2024); 725 ILCS 5/110-6.1(c) (West 2024).

¶ 68    Accordingly, I would reverse and remand for a hearing consistent with section 110-7.5(b) of the Code.